[999 NE2d 1161, 977 NYS2d 716]

JFK Holding Company LLC et al., Respondents, v City of New York et al., Defendants, and The Salvation Army, Appellant.

Argued October 16, 2013; decided November 14, 2013

**POINTS OF COUNSEL**

*Cadwalader, Wickersham & Taft LLP*, New York City (*Cathy H. Chin* and *Jared L. Facher* of counsel), for appellant. I. The limitation of liability provision in the lease requires dismissal of the amended complaint. (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470; *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11; *P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373; *Morone v Morone*, 50 NY2d 481; *Greenfield v Philles Records*, 98 NY2d 562; *MBIA Ins. Corp. v Patriarch Partners VIII, LLC*, 842 F Supp 2d 682; *Gold v 29-15 Queens Plaza Realty, LLC*, 43 AD3d 866; *Drexel Burnham Lambert Group v Vigilant Ins. Co.*, 157 Misc 2d 198.) II. The relationship between The Salvation Army and the City of New York requires the dismissal of the amended complaint. (*Covanta Niagara, L.P. v Town of Amherst Garbage & Refuse Dist. No. 1*, 16 Misc 3d 656, 49 AD3d 1295; *Stardust Lanes v Metropolis Bowling Ctrs.*, 35 Misc 2d 291; *Pensee Assoc. v Quon Indus.*, 241 AD2d 354; *Wen Kroy Realty Co. v Public Natl. Bank & Trust Co.*, 260 NY 84; *Standard Bldrs. Supplies v Gush*, 206 AD2d 720; *Riverside Research Inst. v KMGA, Inc.*, 108 AD2d 365, 68 NY2d 689; *Guardian Life Ins. Co. of Am. v Chemical Bank*, 94 NY2d 418; *William Stevens, Ltd. v Kings Vil. Corp.*, 234 AD2d 287; *Savoy Record Co. v Cardinal Export Corp.*, 15 NY2d 1; *Ell Dee Clothing Co. v Marsh*, 247 NY 392.)

*Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Jennifer S. Recine* and *Michael J. Bowe* of counsel), for

respondents. I. The limitation of liability does not apply because The Salvation Army failed to act in a commercially reasonable manner. (*Slatt v Slatt*, 64 NY2d 966, 65 NY2d 785; *Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61; *R/S Assoc. v New York Job Dev. Auth.*, 98 NY2d 29, 98 NY2d 693; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *Beal Sav. Bank v Sommer*, 8 NY3d 318; *MBIA Ins. Corp. v Patriarch Partners VIII, LLC*, 842 F Supp 2d 682; *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11; *Prudential-Bache Sec. v Citibank*, 73 NY2d 263; *Campaign for Fiscal Equity v State of New York*, 86 NY2d 307; *Sirlin Plumbing Co. v Maple Hill Homes*, 21 NY2d 831.) II. At best, the lease and related services agreement are ambiguous, precluding dismissal. (*Zuckerwise v Sorceron Inc.*, 289 AD2d 114; *Information Superhighway, Inc. v Talk Am., Inc.*, 274 F Supp 2d 466; *Federal Ins. Co. v Americas Ins. Co.*, 258 AD2d 39; *Bianculli v Bianculli*, 242 AD2d 647; *Friedman v Smithfield, Inc.*, 146 AD2d 567; *JP Morgan Chase Bank, N.A. v Cellpoint Inc.*, 54 AD3d 366; *Amusement Bus. Underwriters v American Intl. Group*, 66 NY2d 878.) III. Plaintiffs have properly stated a cause of action for breach of the implied covenant of good faith and fair dealing. (*Plant City Steel Corp. v National Mach. Exch.*, 23 NY2d 472; *Cohn v Lionel Corp.*, 21 NY2d 559; *Citi Mgt. Group, Ltd. v Highbridge House Ogden, LLC*, 45 AD3d 487; *Maddaloni Jewelers, Inc. v Rolex Watch U.S.A., Inc.*, 41 AD3d 269; *Gross v Empire Healthchoice Assur., Inc.*, 16 Misc 3d 1112[A], 2007 NY Slip Op 51390[U].) IV. The Salvation Army's relationship with the City does not require dismissal. (*Sorenson v Bridge Capital Corp.*, 52 AD3d 265; *Stardust Lanes v Metropolis Bowling Ctrs.*, 35 Misc 2d 291; *Resurgent Capital Servs., LLC v Mackey*, 32 Misc 3d 265; *James McKinney & Son v Lake Placid 1980 Olympic Games*, 61 NY2d 836; *Covanta Niagara, L.P. v Town of Amherst Garbage & Refuse Dist. No. 1*, 16 Misc 3d 656; *Matter of State of New York v Town of Hardenburgh*, 273 AD2d 769; *State of New York v Schenectady Chems.*, 117 Misc 2d 960; *Coastal Commercial Corp. v Kosoff & Sons*, 10 AD2d 372; *Matter of Jones*, 48 Misc 2d 358; *Energycresent, Inc. v Creative Modules Enters.*, 183 AD2d 804; *Lukowsky v Shalit*, 110 AD2d 563.)

**OPINION OF THE COURT**

SMITH, J.

Plaintiffs leased a building to The Salvation Army, which operated it as a homeless shelter under an agreement with the

City of New York. The lease was terminated, and plaintiffs now seek damages from The Salvation Army, claiming that the leased premises were returned in bad condition. We hold that plaintiffs' claim is barred by the plain language of the Lease.

## I

The two plaintiffs are related entities; to simplify discussion, we ignore the distinctions between them. They own a building in Queens formerly known as the Carlton House Hotel. They allege that in 2002, the City entered into discussions with them about using the building as a homeless shelter. Plaintiffs also allege that "for political reasons" the City preferred not to rent the building itself, but to make The Salvation Army, which would operate the homeless shelter, the tenant. Later in 2002, a deal was struck in which plaintiffs and The Salvation Army entered into a Lease, and The Salvation Army entered into a Services Agreement with the City. The Services Agreement required the City to make payments to The Salvation Army that would be at least enough to cover The Salvation Army's obligations to plaintiffs under the Lease.

The Lease reflected the understanding of the parties that The Salvation Army was essentially an intermediary between plaintiffs and the City. For purposes of this case, the key provision of the Lease is Paragraph 31, captioned "Services Agreement," which says in relevant part:

> "Notwithstanding anything to the contrary set forth in this Lease, (i) the parties acknowledge that Tenant [The Salvation Army] is entering into this Lease solely in order to enable Tenant to fulfill its obligations to the [City] under the Services Agreement and (ii) Landlord agrees that . . . Tenant shall only be liable for Base Rent . . . or other payments under this Lease, including without limitation . . . damages for breaches of any covenant under this Lease . . . solely to the extent of the amounts paid to Tenant from time to time under the Services Agreement or otherwise in connection with the use of the Leased Premises."

In short, The Salvation Army was not obligated to pay plaintiffs any more than the City paid to The Salvation Army. However, Paragraph 31 requires The Salvation Army to "use commercially reasonable efforts to enforce its rights against the [City] under the Services Agreement or otherwise."

The Lease also provided, in Paragraph 32, that, if the City terminated the Services Agreement, The Salvation Army could terminate the Lease upon payment to plaintiffs of a termination fee, and the Services Agreement required the City to supply to The Salvation Army the money necessary to pay the fee. Paragraph 32 of the Lease added that it would be a "condition precedent to the effectiveness of any such termination" that The Salvation Army "deliver vacant possession of the Leased Premises to Landlord in accordance with Paragraph 23 of this Lease." Paragraph 23 required, among other things, that The Salvation Army "leave and surrender the Leased Premises . . . in the same condition in which the Leased Premises was at the commencement of this Lease."

In 2005, the City terminated the Services Agreement, and The Salvation Army in turn terminated the Lease. According to plaintiffs, however, The Salvation Army did not comply with the requirement of Paragraph 23 that the premises be returned in their original condition. Plaintiffs allege that the building is in "extreme disrepair" and that its restoration will cost $200 million. If this allegation is true, it seems clear that plaintiffs were not required, under Paragraph 32, to accept the termination of the Lease; they could have insisted that the Lease remain in force, and that The Salvation Army continue to pay rent, until the building was fixed. It is undisputed, however, that plaintiffs accepted the $10 million termination fee payment called for by the Lease. Plaintiffs do not assert that the termination of the Lease was ineffective.

Plaintiffs bring this action to collect damages for the alleged injury to their building. The action was originally brought against the City, but plaintiffs' claims against the City have been dismissed, and are not now before us. The Salvation Army was later added as a defendant, and plaintiffs pleaded claims against it for breach of contract and for breach of an implied covenant of good faith and fair dealing. Supreme Court dismissed both claims (2010 NY Slip Op 32894[U] [2010]), but the Appellate Division, with two Justices dissenting, modified to reinstate the breach of contract cause of action (*JFK Holding Co. LLC v City of New York*, 98 AD3d 273 [1st Dept 2012]).

The Appellate Division majority concluded that plaintiffs had adequately pleaded a breach of the Lease, emphasizing The Salvation Army's obligation to "use commercially reasonable efforts" to enforce its rights against the City (*id.* at 276-278). The majority held, however, that the claim for breach of the covenant of good faith and fair dealing was properly dismissed (*id.*

at 278). The dissenters would have held that plaintiffs had no claim against The Salvation Army. In the dissenters' view, the "commercially reasonable efforts" clause "does not apply here because the Salvation Army did not have any right to recover posttermination restoration costs" from the City (*id.* at 280 [Freedman, J., dissenting]).

The Appellate Division granted leave to appeal, certifying to us the question of whether its order was properly made. We answer the question in the negative and reverse. Plaintiffs did not seek leave to cross-appeal from the Appellate Division's affirmance of the order dismissing their claim for breach of the covenant of good faith and fair dealing, and we therefore do not consider their arguments in support of that claim.

## II

The chief issue between the parties, and the issue that divided the Appellate Division Justices, is a narrow one. The Lease is clear that, as a general proposition, The Salvation Army is not obliged to pay more to plaintiffs than it can recover from the City, and it is equally clear that The Salvation Army must do what it reasonably can to recover what the City owes it. If The Salvation Army breached its duty to use commercially reasonable efforts to enforce a City obligation, it could not rely on the City's nonpayment of that obligation to defeat plaintiffs' claim. We agree with the Appellate Division dissenters, however, that the complaint fails to allege any commercially reasonable step that The Salvation Army should have taken to recover money from the City.

Plaintiffs do not identify any provision of the Services Agreement under which the City owes money to The Salvation Army that The Salvation Army failed to collect. The provision in the Services Agreement the plaintiffs rely on most heavily is Article 6.1 (C), which says that The Salvation Army and the City "shall review annually the amount of payments made pursuant to this Agreement to determine the appropriateness of the rates." Plaintiffs' theory is that, because of the bad condition of the property, the amounts paid by the City to The Salvation Army should have been increased. But it requires considerable strain on the language of the Services Agreement to argue that Article 6.1 (C) gave The Salvation Army a right of action against the City on the present facts. It was commercially reasonable for The Salvation Army to think that it was unlikely to recover more than the City had paid it.

Since plaintiffs have not sufficiently alleged that The Salvation Army breached the "commercially reasonable efforts" clause in Paragraph 31 of the Lease, the limitation of liability in the same paragraph bars this action. Plaintiffs complain that this result subjects them to a hardship, but if it does, it is a hardship they might have avoided. As we mentioned earlier, if the allegations of the complaint are true, plaintiffs could have rejected The Salvation Army's termination of the Lease and continued collecting rent until the building was restored to its original condition—but that would have required plaintiffs to reject the proffered $10 million termination fee. Having chosen to take the money, plaintiffs have no further remedy under the Lease.

Accordingly, the order of the Appellate Division should be reversed with costs, the amended complaint dismissed as against The Salvation Army, and the certified question answered in the negative.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and ABDUS-SALAAM concur; Judge RIVERA taking no part.

Order reversed, with costs, the amended complaint dismissed as against defendant The Salvation Army and certified question answered in the negative.