Veolia Energy N. Am. Holdings, Inc. v Enwave W. Coast Holdings, LLC
2026 NY Slip Op 03414
June 2, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Veolia Energy North America Holdings, Inc., Plaintiff-Appellant,
v
Enwave West Coast Holdings, LLC, et al., Defendants-Respondents.

Decided and Entered: June 02, 2026
Index No. 651265/24|Appeal No. 6760|Case No. 2025-01665|
Before: Moulton, J.P., Kapnick, GonzáLez, Shulman, Chan, JJ.

Selendy Gay PLLC, New York (Corey Stoughton of counsel), for appellant.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Michael B. Carlinsky of counsel), for respondents.

[*1]
Order, Supreme Court, New York County (Joel M. Cohen, J.), entered on or about February 19, 2025, which, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the causes of action for breach of contract and declaratory judgment with prejudice, unanimously affirmed, without costs.
This action arises from a 2017 purchase and sale agreement (PSA) governing the sale of certain plaintiff-affiliated entities that provided energy-related operation and maintenance (O&M) services to commercial customers. The parties to the PSA are (i) the purchaser, Brookfield District Energy West USA, LLC, who subsequently assigned its interest to Enwave West Coast Holdings LLC, which later changed its name to CenTrio Energy LLC (the "purchaser defendants"), and (ii) the seller, nonparty Thermal Entities, who subsequently assigned its interests to plaintiff Veolia Energy North America Holdings, Inc (Veolia). In connection with the PSA, certain defendants also entered into limited guaranties in favor of plaintiff (the "guarantor defendants").FN1
As relevant to this appeal, the PSA provides that the purchaser defendants would be required to pay a base price of $71,300,000, and an "End Date Contingent Payment" of $32,100,1000 on or before December 31, 2023. The End Date Contingent Payment was subject to reduction under the terms of the PSA if the purchaser defendants did not renew an O&M agreement between nonparties Venetian Casino Resort, LLC (Venetian) and Veolia LV (the Venetian O&M Agreement). Plaintiff alleges that the purchaser defendants sabotaged renewal negotiations with Venetian by making an offer they knew Venetian would reject to avoid the End Date Contingent Payment.
Initially, plaintiff failed to preserve its argument that the PSA has a full term of 20 years, and we decline to consider that issue (see Vista Eng'g. Corp. v Everest Indem. Ins. Co., 161 AD3d 596, 598 [1st Dept 2018]). In any event, at the time that the parties executed the PSA in 2017, the Venetian O&M Agreement was governed by a 2009 amendment with a 10-year renewal term and permitted up to two five-year renewal terms.
As relevant to this appeal, section 5.13(a) of the PSA imposes three distinct requirements on the purchaser defendants: that they "shall use commercially reasonable efforts to obtain a renewal of each O&M Agreement . . . with a substantially similar scope of services and on terms and conditions no less favorable to the Customer than its respective existingagreement."FN2
[*2]
In light of the terms in section 5.13(a), plaintiff failed to allege a cause of action for breach of contract. The purchaser defendants offered Venetian's parent company a 10-year renewal of the Venetian O&M Agreement, which had the same term length as the Venetian O&M Agreement in effect at the time the PSA was negotiated. The purchaser defendants therefore demonstrated under the plain terms of section 5.13(a) that they used commercially reasonable efforts in negotiating a renewal of the agreement because their offer was comparable to the terms existing under the Venetian O&M Agreement (see JFK Holding Co. LLC v City of New York, 21 NY3d 722, 727 [2013]; see also Iberdrola Energy Projects v Oaktree Capital Mgt. L.P., 231 AD3d 33, 40 [1st Dept 2024]).
Plaintiff argues that because Venetian indicated that it preferred a 5-year renewal term, rather than continuation of the existing 10-year term, the purchaser defendants should have offered a 5-year term as a commercially reasonable alternative. However, the purchaser defendants' failure to offer Venetian a shorter term does not constitute a failure to use commercially reasonable efforts to renew the agreement. Although the PSA does not expressly define the phrase "commercially reasonable efforts," the plain language of section 5.13(a) supplies an objective benchmark for the renewal terms that the purchaser defendants were required to offer: the same terms in the agreement that existed at the time the parties entered into the PSA. The purchaser defendants cannot have breached an obligation to exercise commercially reasonable efforts to obtain a renewal on the terms of the existing agreement by offering exactly those terms (see JFK Holding Co. LLC, 21 NY3d at 727).
We also note that although "commercially reasonable efforts" is generally a fact-specific inquiry (see Atlas MF Mezzanine Borrower, LLC v Macquarie Texas Loan Holder LLC, 174 AD3d 150, 165 [1st Dept 2019]), it is not invariably so (see e.g. JFK Holding Co., 21 NY3d at 727). Here, where the plain terms of the PSA provide a clear benchmark for "commercially reasonable efforts," it is appropriate to decide the matter on a motion to dismiss.
[*3]
The complaint and the documentary evidence establish that the purchaser defendants also complied with the conditions precedent set forth in section 5.13(d) of the PSA. Section 5.13(d) provides that the Purchaser shall not be required to accept a renewal "with or on any other terms that Purchaser, after consultation with Sellers and taking reasonable steps to mitigate the impact of such terms, deems commercially unacceptable." The purchaser defendants were not required to renew the Venetian O&M Agreement where, as here, they participated in the request for proposal process, communicated to plaintiff why the five-year term was commercially unacceptable, and offered to mitigate the impact of a shorter renewal by adjusting the contractual earnout structure. Accordingly, section 5.13(d) independently permitted the purchaser defendants to reject Venetian's terms.
In light of our determination, the declaratory judgment cause of action, which seeks to hold the guarantor defendants jointly and severally liable for the End Date Contingent Payment, was properly dismissed with prejudice.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 2, 2026

Footnotes

Footnote 1
The guarantor defendants include: District Energy Holdings, LP, Brookfield Infrastructure Fund II-A, L.P., Brookfield Infrastructure Fund II-A(CR) L.P., Brookfield Infrastructure Fund II-B, L.P., Brookfield Infrastructure Fund II-C, L.P., Brookfield Infrastructure Fund II-D, L.P., Brookfield Infrastructure Fund II-D(CR), L.P., BIP District Energy US Holdings, L.P., BIP District Energy Holdings, L.P., and Brookfield Infrastructure Fund GP II LLC.

Footnote 2
We reject defendants' assertion that plaintiff abandoned its argument regarding the requirements set forth in section 5.13(a) of the PSA (see McHale v Anthony, 41 AD3d 265, 266-267 [1st Dept 2007]).