OPINION OF THE COURT
Titone, J.
When a prosthetic device malfunctions, does a cause of action for medical malpractice accrue upon implantation of the prosthetic device or upon injury to the patient? That is the sole question before us. We conclude that the cause of action accrues upon implantation.
In 1973, plaintiff Robert Goldsmith received a total hip replacement in an operation performed by defendant Chitranjan S. Ranawat. The femoral component of the implant, manufactured by defendant Howmedica, Inc., broke in 1981. Goldsmith commenced this action in 1983 against the doctor for malpractice; Goldsmith’s wife brought suit for loss of consortium.[1] Special Term granted Dr. Ranawat’s motion for summary judgment and dismissed the complaint as to him on the ground that the Statute of Limitations barred the malpractice action.[2] The Appellate Division affirmed, but granted leave to appeal. We affirm.
The general rule is that an action accrues and the Statute of Limitations begins to run at the time of the commission of the alleged malpractice (e.g., Davis v City of New York, 38 NY2d 257, 259). We have, to date, recognized but two exceptions. First, in a case where the doctor continues to treat the plaintiff after the act of malpractice, the Statute of Limitations is tolled until after the plaintiff’s last treatment for the same injury or illness (McDermott v Torre, 56 NY2d 399, 407; Borgia v City of New York, 12 NY2d 151). Second, in circumstances in which the doctor leaves a "foreign object” in the plaintiff’s body, the action does not accrue until after the object is discovered by the plaintiff (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427).[3]
*123 Plaintiffs argue that Martin v Edwards Labs. (60 NY2d 417), represented a third exception because we allowed the assertion of a claim against the manufacturers of prosthetic devices within three years of injury even though the devices had been implanted years earlier. We do not agree.
Martin involved a products liability action against the manufacturers of a prosthetic device and its component parts. Products liability actions are vastly different from medical malpractice actions in this context, because until the device malfunctions, there is no cause to complain against, or privity to, the manufacturer of a prosthetic device.
Moreover, in analyzing the proper distribution of risks between manufacturers of prosthetic aids and patients in Martin, we did not attempt to apportion the risks between physician and patient, an issue involving substantially different policy considerations (60 NY2d, at p 428, n). In this regard, it is noteworthy that in response to the medical malpractice crisis, the Legislature has enacted CPLR 214-a, covering actions involving acts of medical malpractice committed on or after July 1, 1975, which expressly excludes chemical compounds, fixation devices and prosthetic aids from the embrace of the term "foreign object”. Although this case is not governed by CPLR 214-a and plaintiffs do not urge that a prosthetic device is a foreign object, we cannot ignore the clearly expressed legislative intent that the present exception to the general time of commission accrual rule not be broadened beyond its existing confines (Thornton v Roosevelt Hosp., 47 NY2d 780; Matter of Beary v City of Rye, 44 NY2d 398; Weber v Scheer, 58 AD2d 520; Report of Special Advisory Panel on Medical Malpractice, at 36, 176; Memorandum, Governor’s Program Bill in Bill Jacket to L 1975, ch 109).
Plaintiffs also claim that to require the bringing of an action within three years of the commission of the malpractice *124 effectively forecloses an action against the doctor before any injury has been suffered. The argument is not new. We have carefully considered it on numerous occasions. In each, we weighed the detriments of such a result against the effect of potentially open-ended claims upon the repose of defendants and society, and held that the Statute of Limitations must run from the time of the act until the Legislature decrees otherwise (Fleishman v Lilly & Co., 62 NY2d 888; Thornton v Roosevelt Hosp., supra; Matter of Beary v City of Rye, supra; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, cert denied 374 US 808; Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 302; see also, Malpractice — Commencement of Limitations, Ann., 70 ALR3d 7,12).
For these reasons, the action against Dr. Ranawat accrued in 1973 and, therefore, is barred by the three-year Statute of Limitations. Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Hancock, Jr., concur.
Order affirmed, with costs. Question certified not answered as unnecessary.

. The actions against the manufacturer are not the subject of this appeal.

. Since the alleged malpractice occurred before July 1, 1975, the action is governed by a three-year Statute of Limitations (CPLR 214, 214-a; McDermott v Torre, 56 NY2d 399, 407; Farrell, Civil Practice, 28 Syracuse L Rev 379, 391).

. Although some courts and commentators have urged that the factors mandating a date of discovery rule in "foreign object” cases are no less persuasive in malpractice cases involving implantation devices (Reyes v *123 Bertocchi, 92 AD2d 863 [2d Dept]; Murphy v St. Charles Hosp., 35 AD2d 64 [2d Dept]; Samore and Tymann, Torts, 24 Syracuse L Rev 551, 560), others have reasoned that the causal connection between the surgeon and the plaintiifs’ injuries is weaker in a case concerning prosthetic aids than in the cases involving an object left in the body during surgery (Kearney v Jewish Mem. Hosp., 65 AD2d 329 [1st Dept]; Cooper v Edinbergh, 75 AD2d 757 [1st Dept] [wire sutures not "foreign object”]). We think that the latter decisions are more consistent with the policies behind the Statute of Limitations. In cases involving prosthetic devices, the plaintiffs’ injuries might have been caused by negligence of the attending physician, by the plaintiffs’ physiological condition or by defects in the prosthetic aids.