■ JENNA LYNN PAHLAD, an Infant, by the Appointed Guardian of Her Properties, DANIEL BERGER, et al., Appellants, v LOIS BRUSTMAN, M.D., et al., Respondents. [823 NYS2d 61]—

Order, Supreme Court, Bronx County (Sallie Manzanet, J.), entered on or about October 21, 2004, which granted defendants' motion pursuant to CPLR 3211 (a) to dismiss the complaint, affirmed, without costs.

This action arises out of the birth of the infant plaintiff, Jenna Lynn Pahlad, on September 25, 2000, suffering from Cornelia

de Lange syndrome, which, in this case, was manifested by the absence of upper extremities. Plaintiffs commenced the within action by the service of a summons and verified complaint, dated November 5, 2003, asserting, inter alia, that defendants negligently interpreted an obstetrical ultrasonogram, which had been performed on June 1, 2000, and as the result of which, plaintiff Sharmila Pahlad carried the pregnancy to full term. Plaintiffs maintain that, had she been correctly advised of the fetus's condition, she would have lawfully terminated the pregnancy prior to her third trimester.

Defendants thereafter moved, inter alia, to dismiss the complaint, pursuant to CPLR 3211 (a) (5) and (7), on the ground that it was barred by the applicable statute of limitations (CPLR 214-a). The motion court granted defendants' motion, holding that the causes of action asserted on behalf of the infant are not cognizable in the State of New York, that the causes of action asserted on behalf of the infant plaintiff's parent should be dismissed as time-barred because the action was not commenced within 2¹/₂ years of the infant plaintiff's birth, and that the facts of this case do not warrant tolling the applicable limitations period. Plaintiffs appeal and we now affirm.

We agree with the dissent that a cause of action for wrongful life accrues at the time of the infant plaintiff's birth (*Ciceron v Jamaica Hosp.*, 264 AD2d 497, 498 [1999]) and that the 2¹/₂-year limitations period embodied in CPLR 214-a governs this matter. We cannot agree, however, with the dissent's determination that plaintiffs' "assertions and submissions" create an issue of fact as to whether the doctrine of equitable estoppel lies so as to toll the statute of limitations.

The doctrine of equitable estoppel is an "extraordinary remedy" (*East Midtown Plaza Hous. Co. v City of New York*, 218 AD2d 628, 628 [1995]) which may bar a defendant from asserting the statute of limitations when the plaintiff "was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (*Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]; *Kaufman v Cohen*, 307 AD2d 113, 122 [2003]). In *General Stencils v Chiappa* (18 NY2d 125, 128 [1966]), the Court of Appeals opined that: "[o]ur courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations *where it is the defendant's affirmative wrongdoing* . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding" (emphasis added).

Moreover, the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations (*Zumpano v Quinn*, 6

NY3d 666, 674 [2006]; *Simcuski*, 44 NY2d at 449), and due diligence on the part of the plaintiff in ascertaining the facts, and in commencing the action, is an essential element when plaintiff seeks the shelter of this doctrine (*id.* at 450; *Putter v North Shore Univ. Hosp.*, 25 AD3d 539, 541 [2006]).

In this matter, the infant plaintiff was born on September 25, 2000 and plaintiffs, approximately nine months later, by letter dated June 1, 2001, made their first request for the infant plaintiff's medical records from Dr. Renuka Paka, who had ordered the prenatal obstetrical sonogram of the infant plaintiff. Dr. Paka promptly responded to the request on June 27, 2001, at which time she provided her record, including a report from the June 1, 2000 sonogram which indicated that the development of all four limbs was "normal."

Plaintiffs thereafter made a second request for the infant plaintiff's medical records from defendant Saint Luke's-Roosevelt Hospital Center (St. Luke's) in August 2001, and on October 12, 2001, St. Luke's forwarded to plaintiffs a copy of each plaintiff's hospital chart, including the aforementioned obstetrical sonogram report, which again indicated the presence of four normal limbs. There is no dispute that neither Dr. Paka, nor St. Luke's, in response to the first two requests, provided plaintiffs with the actual sonogram films, which plaintiffs now describe in various documents and letters as, among other things, "critical" and "crucial" to their case. Yet, despite the purportedly decisive nature of these films, and the acute importance to their case, plaintiffs made *absolutely no further effort* to obtain the films until March 11, 2003, 19 months after their last request for records, 17 months after St. Luke's responded to plaintiffs' August 2001 inquiry, and just two weeks prior to the expiration of the statute of limitations.

In light of the foregoing undisputed sequence of events, it is clear that plaintiffs' efforts, or lack thereof, to ascertain the facts cannot be viewed, even under the most liberal interpretation, as comprising due diligence, an essential element of equitable estoppel. The "dogged persistence" of plaintiffs' counsel, of which the dissent speaks, apparently occurred just days prior to, and then after, the expiration of the limitations period.

We further disagree with the dissent's conclusion that plaintiffs lacked a good faith basis to have commenced this action on the eve of the expiration of the statute of limitations, without a certificate of merit, pursuant to CPLR 3012-a. Indeed, with the exception of the sonogram films themselves, plaintiffs were in possession of all the relevant medical records and the fact that none of these records indicated a problem with the

pregnancy, coupled with the sonogram report, which plaintiffs received on two separate occasions, that affirmatively stated that no problem existed of the type infant plaintiff suffers, should certainly have placed plaintiffs on notice that something was amiss and, in our view, is more than sufficient to constitute a good faith basis to have timely brought this action without a certificate of merit.

Finally, the motion court properly concluded that New York law, not the law of Florida, plaintiffs' after-acquired domicile, governed the claim for wrongful life. The injury occurred, and the claim accrued, at the moment the infant plaintiff was born, and plaintiffs continued to live in New York for the next two years. Thus, at the time the cause of action accrued, all parties were New York domiciliaries and New York was the locus of the tort. No basis exists for application of any other state's law, since all the relevant contacts were here, and only New York's interests were implicated. Moreover, the motion court correctly found that a cause of action, on behalf of an infant plaintiff, may not be maintained for wrongful life (*Sheppard-Mobley v King*, 4 NY3d 627, 638 [2005]; *Alquijay v St. Luke's-Roosevelt Hosp. Ctr.*, 63 NY2d 978, 979 [1984]).

We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Tom, J.P., Nardelli and Williams, JJ.

Saxe and Gonzalez, JJ., dissent in a memorandum by Saxe, J., as follows: I would reinstate this complaint. There is evidence here indicating that plaintiffs' ability to determine whether malpractice had been committed may have been obstructed by defendants' failure to provide copies of the critical ultrasound scan until after the statute of limitations on the claim had run. A colorable claim therefore is raised that defendants should be equitably estopped from reliance on the limitations period of CPLR 214-a (*see Kamruddin v Desmond*, 293 AD2d 714 [2002]; *Hazel v Montefiore Med. Ctr.*, 243 AD2d 344 [1997]). Under such circumstances, it is inappropriate to conclude as a matter of law, in the context of a motion pursuant to CPLR 3211, that the action must be dismissed as untimely.

This action arises out of the birth of the infant plaintiff, Jenna Lynn Pahlad, on September 25, 2000, with various deformities, including unformed upper limbs. In their verified complaint, dated November 5, 2003, plaintiffs assert that defendants were negligent in interpreting and reporting the results of ultrasound imaging of the fetus in utero conducted on June 1, 2000, during plaintiff Sharmila Pahlad's second trimester of pregnancy. Specifically, the erroneous narrative report of that procedure indicated that all four limbs were observed to be present in the

ultrasound scan. As a result, plaintiff mother was not informed of the fetus's abnormalities, and carried to term an infant suffering from Cornelia de Lange syndrome. It is asserted that the child will require intervention and assistance for the remainder of her life in order to feed herself, clothe herself, become educated, earn income and perform all functions requiring the use of upper limbs.

The complaint alleged causes of action on behalf of the infant plaintiff and plaintiff mother. While a claim for wrongful life on behalf of the infant is not cognizable in this state, the parents of the infant plaintiff are entitled to seek recovery for their economic expenses (*see Alquijay v St. Luke's-Roosevelt Hosp. Ctr.*, 63 NY2d 978, 979 [1984]).

The majority of this Court now affirms the dismissal of this viable claim on timeliness grounds, because the action was commenced over $2^1/_2$ years after the birth of the infant (*see* CPLR 214-a), concluding that there was no basis for equitably tolling the $2^1/_2$-year statute of limitations (*see Hazel v Montefiore Med. Ctr.*, 243 AD2d 344 [1997]).

Although plaintiff parents' claim for economic expenses accrues at the time of the infant's birth (*see Ciceron v Jamaica Hosp.*, 264 AD2d 497 [1999]), plaintiffs' assertions and submissions sufficiently support a claim of equitable estoppel so as to preclude the conclusion that as a matter of law the parents' claim is untimely. Rather, the question of whether equitable estoppel lies is an issue of fact, inappropriate to decide in this CPLR 3211 context.

It is shown that counsel for plaintiffs sought *the complete* medical file from defendants in June and July of 2001, but prior to July 2003 only received medical charts and written summaries of the results of the ultrasound. The actual sonogram films were not turned over until July 2003, after the expiration of the limitations period.

Plaintiffs could not properly have commenced this action prior to obtaining the films, since they could not make a good faith claim of negligence until that time. As the expert consulted by plaintiffs asserted, until those films were obtained and reviewed by their expert, plaintiffs had no way of determining whether malpractice had been committed in the performing and reporting of the results of the sonogram. The majority's observation that plaintiffs had notice that "something was amiss" does not, in my view, equate to a good faith basis to commence an action. Indeed, had plaintiffs chosen to commence an action merely upon the basis that the sonogram report indicated the presence of four normal limbs, while in fact the infant was born without

upper extremities, they would have left themselves open to a viable challenge for insufficiency. Without the opportunity to view the film itself, no one could state whether the failure of the professionals who conducted the ultrasound and read the results to notice and report the fetal abnormalities amounted to negligence, or was instead a reasonable conclusion based upon what could be seen on the films.

CPLR 3012-a, which dispenses with the requirement of a certificate of merit in certain circumstances where the statute of limitations is about to expire, still contemplates a good faith basis for the suit. Until plaintiffs had the films, they had no such basis to conclude that the failure to observe the fetal malformations was based upon the failure of the technician and those viewing the resulting films, rather than some other circumstance for which defendants could not be held responsible.

The majority, like the motion court, seems to conclude that the failure to obtain the films was attributable to plaintiff's counsel, based upon his failure to aggressively follow up his initial requests for the necessary discovery records, until the expiration of the statutory period was just two weeks away. However, the submissions support a possible inference that the hospital may have been intentionally avoiding providing the films counsel sought.

While the director of risk management at the hospital states that no *specific* request for the sonogram films was made until March 11, 2003, and that the hospital's policy is to await such a specific request before turning over such items, there can have been no doubt that plaintiffs' attorney in this action would need to see the sonogram films themselves, not just the written summaries of their results. The assertion of such a purported policy does not necessarily justify the failure to turn them over, particularly since the hospital was not forthcoming with the films even after the specific request was made. Indeed, even after plaintiff's counsel, with dogged persistence, eventually succeeded in independently locating the hospital division in possession of the sonogram images, and when he notified the hospital of exactly where they could be found so copies could be provided to him, the hospital still failed to cooperate in providing counsel with a copy.

Accordingly, an issue is presented with regard to whether defendants should be permitted to rely on the statutory limitations period to preclude the parents' claim. I would therefore reverse and deny defendants' motion to dismiss pursuant to CPLR 3211 (a) (5).