================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 126
B.F., et al.,
          Respondents,
        v.
Reproductive Medicine Associates
of New York, LLP, et al.,
          Appellants.
---------------------------------
No. 127
Marie Dennehy, et al.,
          Respondents,
        v.
Alan B. Copperman, M.D., et al.,
          Appellants.

Case No. 126:
        Caryn L. Lilling, for appellants Reproductive Medicine
Associates of New York, LLP et al.
        Nancy Ledy-Gurren, for appellant Copperman.
        Wendy R. Fleishman, for respondents.

Case No. 127:
        Caryn L. Lilling, for appellants Reproductive Medicine
Associates of New York, LLP et al.
        Nancy Ledy-Gurren, for appellant Copperman.
        James N. LiCalzi, for respondents.

DiFIORE, Chief Judge:

        In Becker v Schwartz, this Court recognized a new cause

of action permitting parents to recover the extraordinary

expenses incurred to care for a disabled infant who, but for a

physician's negligent failure to detect or advise on the risks of

impairment, would not have been born (46 NY2d 401, 410 [1978]).

- 1 -

The issue in these related appeals is whether the statute of limitations for such an extraordinary expenses claim runs from the date of the alleged negligence or the date of birth.  We hold that it is the latter.

I.

The salient allegations in both cases, which we must assume to be true in light of their procedural posture, are the same.  Two couples -- the Dennehys and the Farbers -- sought in vitro fertilization (IVF) treatment from defendant Dr. Alan Copperman at defendant Reproductive Medicine Associates of New York, LLP (RMA).  The couple discussed the possibility of using an egg donor.  Copperman informed each couple that RMA screened donor candidates for all known genetic conditions for which testing is available, but did not state which conditions were included in the screening.  The couple then matched with an anonymous egg donor and, after consenting to the IVF procedure, the plaintiff mother was implanted with fertilized embryos using the donor eggs.  Pregnancy was confirmed and the couple was discharged to their obstetrician/gynecologist.  Each plaintiff mother later gave birth without complications -- the Dennehys had a single infant and the Farbers had twins.  Following birth, Copperman learned that the egg donor had tested positive for the Fragile X trait, a chromosomal abnormality that can result in intellectual disability and other deficits.  He informed the couples within one year of the births, and testing later

confirmed that the Dennehys' infant and one of the Farbers' twins had the full Fragile X mutation.

The parents commenced separate lawsuits against Copperman and RMA.[1]  As relevant here, the complaints allege, in essence, that defendants failed to timely screen the egg donor for the Fragile X mutation or to notify plaintiffs that they did not screen for this trait.  The parents contend these negligent acts or omissions caused them to consent to the IVF procedure and go forward with pregnancy, resulting in the parents incurring extraordinary expenses to care for and treat a child with a disability.  Defendants moved to dismiss both complaints under CPLR 3211 (a) (5) and (a) (7), contending, among other things, that the extraordinary expenses claim is time-barred by CPLR 214-a, which provides that a 2½-year statute of limitations for medical malpractice claims runs from "the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure" (CPLR 214-a).  Defendants argued that the limitations period runs from the date of the alleged malpractice, which they identified as the date the embryo was implanted in the mother.  Plaintiffs opposed the motions to dismiss, contending that the limitations period started on the date of birth.  It is undisputed that if the

---

[1] The Dennehys' complaint also named as a defendant Reproductive Medicine Associates - International, LLP.

statute of limitations runs from the date of malpractice, even assuming the continuous treatment toll extended the date to plaintiffs' discharge to their obstetrician/gynecologist, the cause of action would be time-barred.

In each case, Supreme Court, among other things, denied the motion to dismiss with respect to the extraordinary expenses claim. The court held that the statute of limitations began to run upon the infant's birth, which rendered both actions timely. The Appellate Division affirmed, insofar as relevant here (136 AD3d 73 [1st Dept 2015]; 134 AD3d 543 [1st Dept 2015]), and thereafter granted defendants leave to appeal, certifying the question whether the orders were properly made.[2] We now affirm.

II.

In negligence cases, the statute of limitations generally begins to run when a cause of action accrues (see Aetna Life & Cas. Co v Nelson, 67 NY2d 169, 175 [1986]). Absent legislative action to the contrary, courts have authority to determine when a common-law cause of action accrues (see Fleishman v Lilly & Co., 62 NY2d 888, 891-892 [1984]; see e.g. Ackerman v Price Waterhouse, 84 NY2d 535, 541-542 [1994]).

In 1978, this Court recognized a new, narrow cause of action permitting parents to recover the extraordinary care and

_____

[2] Since the Farber plaintiffs did not cross appeal, their argument relating to the portion of the Appellate Division order dismissing five other causes of action is not before us (see JFK Holding Co. LLC v City of New York, 21 NY3d 722, 727 [2013]).

treatment expenses "accruing as a consequence of the birth" of a child with a disability (Becker, 46 NY2d at 412).  This claim, "founded essentially upon a theory of negligence or medical malpractice," requires "a duty flowing from defendants to [plaintiffs] and that the breach of that duty was the proximate cause of the birth of their infants" (46 NY2d at 412).  The claim is restricted to those instances in which the plaintiffs can demonstrate "that but for the defendants' breach of their duty to advise plaintiffs, the latter would not have been required to assume these [extraordinary financial] obligations" (46 NY2d at 412-413).  In other words, parents bringing this type of action may seek to recover only "'the increased financial obligation arising from the extraordinary medical treatment rendered the child during minority'" (Foote v Albany Med. Ctr. Hosp., 16 NY3d 211, 215 [2011], quoting Bani-Esraili v Lerman, 69 NY2d 807, 808 [1987]).  No recovery is allowed for any consequent psychic or emotional damages (46 NY2d at 413), nor may parents recover the ordinary costs of raising a healthy child born by reason of so-called wrongful conception (see O'Toole v Greenberg, 64 NY2d 427, 432 [1985]).  The extraordinary expenses claim belongs to the parents alone -- the child cannot bring a claim for "wrongful life" (see Becker, 46 NY2d at 411).  This is because, as a matter of public policy, an infant born in an impaired state suffers no legally cognizable injury in being born compared to not having been born at all (id.).

The question now before this Court is when this "extraordinary expenses" cause of action accrues -- and consequently, when the statute of limitations begins to run.[3] Defendants argue that the date of malpractice controls while plaintiffs contend that the cause of action accrues upon the date of birth.[4]  The parties agree that the cause of action is governed by the 2½-year statute of limitations applicable to medical malpractice actions.  Due to its unique features, we conclude that the cause of action accrues upon, and hence the limitations period runs from, the birth of the child.

A claim accrues "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief" (Aetna, 67 NY2d at 175; see also Kronos, Inc. v

---

[3] This is an issue of first impression in our Court.  In Jorge v New York City Health & Hosps. Corp., the only issue before us was whether the continuous treatment doctrine tolled the plaintiff's extraordinary expenses cause of action (79 NY2d 905, 906 [1992]).  We did not consider when the cause of action accrued or whether the lawsuit was otherwise timely.  In Pahlad v Brustman, we affirmed the holding of the courts below that defendants were not barred by equitable estoppel from asserting a statute of limitations defense, again without deciding when the limitations period began to run (8 NY3d 901, 902 [2007]).  In Pahlad, both lower courts had held that the statute of limitations commenced at the time of the infant's birth (see Pahlad v Brustman, 33 AD3d 518, 519 [1st Dept 2006], affg Sup Ct, Bronx County, October 8, 2004, Manzanet-Daniels, J., index no. 26399/2003).

[4] Neither party argues that the cause of action accrues on the date when the parents first incur financial costs related to the care and treatment of their child or the date the malpractice or the child's impaired state is discovered.

AVX Corp., 81 NY2d 90, 94 [1993]).  As a general rule, a "legal right to relief" in a tort action arises when an injury occurs (Ackerman, 84 NY2d at 541).  To determine when a claim accrues, we must balance the competing policy considerations of putting to rest stale claims with ensuring "fairness to the claimant [who] shall not unreasonably be deprived of [the] right to assert [a] claim" (Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 403 [1975] [quotation marks and citation omitted]).

The action's gravamen is that, but for defendants' negligence, the parents would not have conceived or given birth to a child requiring extraordinary expenses for treatment and care.  Plaintiffs allege that, by failing to take steps to detect that the egg donor was a carrier for Fragile X and therefore that the embryo may have had the Fragile X trait, defendants left the parents in an uninformed state as to whether to avert pregnancy or birth -- and the associated costs resulting from birth.  Given the nature of these allegations, it follows that until the alleged misconduct results in the birth of a child, there can be no extraordinary expenses claim.  Moreover, we have stated that the "legally cognizable injury" is that the parents will incur extraordinary expenses to care for and treat the child (Foote, 16 NY3d at 215).  These expenses arise "as a consequence of the birth" (Becker, 46 NY2d at 412), not just the conception.  Prior to a live birth, it is impossible to ascertain whether parents

will bear any extraordinary expenses.[5] Due to these unique circumstances, the cause of action accrues upon the birth of an infant with a disability. This date appropriately balances the competing statute of limitations policy concerns -- it gives parents a reasonable opportunity to bring suit while at the same time limiting claims in a manner that provides certainty and predictability to medical professionals engaged in fertility treatment and prenatal care (see MRI Broadway Rental v United States Min. Prods. Co., 92 NY2d 421, 428 [1998]; Victorson, 37 NY2d at 403).

We respectfully disagree with our dissenting colleague that Goldsmith v Howmedica, Inc. (67 NY2d 120 [1986]) requires a different result. Goldsmith is a classic medical malpractice case in which a plaintiff, who suffered a physical injury, sued a doctor for inserting a defective hip prosthetic, seeking pain and suffering and emotional distress damages, and other relief recoverable in a personal injury case (67 NY2d at 122). There, we reiterated the common-law rule that the "action accrues and the Statute of Limitations begins to run at the time of the commission of the alleged malpractice" (67 NY2d at 122). In contrast, the instant case involves a distinct cause of action

_____

[5] Contrary to the dissent's assertion (dissenting op at 2-3), nothing in our analysis addresses much less restricts which treatment and care expenses qualify as extraordinary expenses or decides whether expenses incurred prior to accrual in anticipation of the special care the child will require could be covered.

for extraordinary expenses, which we determine -- for the first time on this appeal -- to accrue on the date of birth.  Our holding that the limitations period also runs from the date of birth is consistent with the accrual-based statute of limitations rule followed in Goldsmith.  There, we rejected plaintiffs' argument that such a rule "effectively forecloses an action against the doctor before any injury has been suffered," and, relying on our precedents, held that the injury in that type of case occurred on the date of negligence, not when the harmful effects were felt (67 NY2d at 123-124, see e.g. Thornton v Roosevelt Hosp., 47 NY2d 780, 781 [1979]).  Here, where the legally cognizable injury arises as a consequence of the birth, the limitations period likewise runs from that date.

## III.

CPLR 214-a -- which provides that a medical malpractice action must be commenced within 2½ years of "the act, omission or failure complained of" -- does not bar this outcome.  Prior to the enactment of CPLR 214-a in 1975, courts followed the common-law rule that the statute of limitations in a medical malpractice action begins to run on the date of the alleged malpractice (see Davis v City of New York, 38 NY2d 257, 259 [1975]).  This comported with the associated common-law rule that a medical malpractice claim accrues on the date of the negligent act or omission.  In 1969, this Court created an exception to the accrual-based rule, holding that "where a foreign object has

negligently been left in the patient's body, the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice" (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 431 [1969]).  Following Flanagan, lower courts moved toward adopting a discovery rather than an accrual rule more broadly in medical malpractice cases (see Walton v Strong Mem. Hosp., 25 NY3d 554, 561-562 [2015]).

          The legislature expressed concern that these decisions had "a potential of bringing virtually all medical malpractice cases under the discovery rule" (Governor's Program Bill Mem at 4, Bill Jacket, L 1975, ch 109).  To halt this trend, the legislature enacted CPLR 214-a, which codified the common-law rule, as applied in a case like Goldsmith, that the limitations period for medical malpractice begins to run at the time the cause of action accrues -- the date of malpractice.  This served to curtail further "judicial expansiveness towards a more plaintiff friendly discovery rule" (LaBarbera v New York Eye & Ear Infirmary, 91 NY2d 207, 213 [1998] [emphasis added]; see also Rodriguez v Manhattan Med. Group, 77 NY2d 217, 221 [1990]).  There is no question that, in the wake of CPLR 214-a and its companions, the legislature has exclusive authority to determine when the discovery rather than the traditional rule should apply (see e.g. CPLR 214-b [agent orange exposure]; CPLR 214-c [toxic

torts]).[6]  However, nothing in the legislative history suggests an intent to constrict judicial authority to otherwise define when a cause of action accrues, or to mandate that the limitations period should commence prior to accrual.  Following CPLR 214-a, we have continued to hold that the typical medical malpractice cause of action accrues at the time of the malpractice, consistent with the statute (see Massie v Crawford, 78 NY2d 516, 519 [1991]; Nykorchuck v Henriques, 78 NY2d 255, 258 [1991]).  Indeed, we explained in Massie that CPLR 214-a established that "[a]n action for medical malpractice must be commenced within two years and six months of the date of accrual," citing our common-law precedents to show that a malpractice claim accrues on the date of the alleged malpractice (78 NY2d at 519).

Yet this is not the typical medical malpractice case. Three years after the legislature enacted CPLR 214-a, this Court recognized for the first time the extraordinary expenses claim, which, as explained above, cannot accrue until the live birth of the infant.  Before Becker and prior to CPLR 214-a, we declined to recognize related causes of action for wrongful life (see Williams v State of New York, 18 NY2d 481 [1966]) and for medical

---

[6] Our holding today does not run afoul of that principle. As the dissent acknowledges (dissenting op at 10), the rule we adopt is not a "discovery" rule as the date the parents learn of the malpractice or the child's disability is irrelevant to the running of the limitations period.

malpractice damages on behalf of an infant who is stillborn (see Endresz v Friedberg, 24 NY2d 478 [1969]).  The legislature could not have anticipated our holding in Becker.

This is not the first time that our Court has confronted a situation that falls outside the contours of CPLR 214-a, and reached a similar result.  In LaBello v Albany Med. Ctr. Hosp., we addressed when the limitations period starts for a child's medical malpractice claim for injuries suffered as a result of faulty prenatal care (85 NY2d 701, 704 [1995]).  This differs from the parents' extraordinary expenses claim at issue here in that in LaBello, the child sought damages for her own injuries and the issue was whether the statute of limitations could begin to run before the injured party -- there, the child -- was alive and had the capacity to bring suit.  We determined that the limitations period started to run at birth rather than at the time of the alleged malpractice, notwithstanding the language of CPLR 214-a (85 NY2d at 704).  Although distinguishable in some respects, LaBello raised the same concern that "at the time the alleged malpractice was committed, plaintiff could not have alleged all the elements of the tort in the complaint," explaining that the case "present[ed] one of those interstices between statutory and common-law precedential lines of authority" (85 NY2d at 706-707).  Recognizing that "CPLR 214-a does not encompass and did not contemplate the circumstance at issue," we held that this Court must "fill the gap by

traditional interpretation and common-law development and application" (85 NY2d at 706).  We then determined that due to the specific circumstances of that action, the statute must be interpreted in a manner that permitted the limitations period to run from the date of birth -- i.e., the date the claim accrued -- rather than from the malpractice date (85 NY2d at 704).  Otherwise, the statute of limitations would run before the plaintiffs could bring the suit.  In reaching that conclusion in LaBello, we did not adopt a new "exception" to CPLR 214-a akin to the discovery rule.  Rather, we recognized that CPLR 214-a did "not encompass" an unanticipated situation, and concluded that the legislature would not have intended the statute of limitations to begin to run before suit could be brought.

The case before us likewise requires similar interpretive measures.  The circumstances here preclude the parents from bringing the lawsuit until the child is born, and thus the statute of limitations must run from the date of birth.  This result best harmonizes the unique and unanticipated features of this cause of action with the principles animating CPLR 214-a.  Thus, because plaintiffs' causes of action for extraordinary expenses accrued upon the birth of their children, the courts below properly determined that the claims were timely.

Accordingly, in each case, the order of the Appellate Division insofar as appealed from should be affirmed, with costs, and the certified question answered in the affirmative.

B.F. v Reproductive Medicine Assoc.
Dennehy v Copperman

Nos. 126 & 127

GARCIA, J.(dissenting):

CPLR 214-a provides that a medical malpractice action "must be commenced" within two-and-a-half years "of the act, omission, or failure complained of . . ." (CPLR 214-a). By its terms, CPLR 214-a's accrual-upon-act-or-omission rule admits of only two exceptions: the "continuous treatment" exception and the "foreign object" exception (see CPLR 214-a; see also LaBello v Albany Med. Ctr. Hosp., 85 NY2d 701, 706 [1995]).

Today, the majority creates a third exception, holding that a medical malpractice "wrongful birth" action accrues not on the date of "the act, omission or failure complained of" (CPLR 214-a), but rather on the date of the child's birth. Though its interpretation contravenes the statutory language, the majority authorizes this deviation in the context of so-called "wrongful birth" actions because of the "unique features" associated with those claims (majority op at 6).

There is no "unique circumstances" exception in statutory interpretation. Accordingly, I dissent.

I.

The majority first contends that, "until the alleged misconduct results in the birth of a child, there can be no

- 1 -

extraordinary expenses claim" (majority op at 7).  Given this "unique feature[]," which purportedly "preclude[s] the parents from bringing the action until the child is born," the majority concludes that "the statute of limitations must run from the date of birth" (majority op at 6, 13).  The premise of the majority's holding, however, is both tenuous and irrelevant.

A.

The majority's assumption that plaintiffs' medical malpractice claims require a live birth is novel -- and problematic.  As an initial matter, this Court has never stated that the "legally cognizable injury" in these actions is limited to the "costs resulting from birth" (majority op at 7).  Indeed, in Becker v Schwartz (46 NY2d 401 [1978]), we explicitly declined to circumscribe the scope of recoverable damages: "There is now no occasion . . . to determine with particularity what items of expense or loss may properly be taken into account in computation of the damages recoverable" (Becker, 46 NY2d at 413).  Nor does the "legally cognizable injury" in these medical malpractice actions arise solely "as a consequence of the birth" (majority op at 9).  Rather, the injury occurs much sooner; as the majority notes, "[t]he action's gravamen is that, but for defendants' negligence, the parents would not have *conceived* . . . a child requiring extraordinary expenses" (majority op at 7 [emphasis added]).

Moreover, the majority's assertion -- that a live birth

is a prerequisite for plaintiffs' claims -- will unfairly and arbitrarily restrict the scope of recoverable damages in these types of medical malpractice actions. Given modern medical technology, parents may discover a child's disability in advance of the child's birth and begin incurring expenses -- purchasing specialized equipment, monitors, clothing, etc. -- in preparation for the child's arrival. Under the majority's theory, however, these costs are not recoverable solely because they are incurred prior to the child's birth.

Though the majority asserts that its holding does not restrict parents from recovering expenses incurred "in anticipation of" the child's arrival (majority op at 7-8), that suggestion is undermined by the majority's fundamental holding that a parent's "legally cognizable injury" does not occur until the child's birth. Of course, under basic tort law principles, a plaintiff cannot recover for damages allegedly incurred *prior* to sustaining an injury; a plaintiff's harm cannot proximately flow from an event that has not yet occurred (see generally Restatement [Second] of Torts § 902, Comment *a* ["Damages flow from an injury"]; see also Ambassador Hotel Co., Ltd. v Wei-Chuan Investment, 189 F3d 1017, 1028 [9th Cir 1999] [noting that "events which occur after the injury has occurred cannot be said to have caused the injury"]). Moreover, even if pre-injury damages were somehow recoverable, the clear implication of the majority's assertion is that a parent who accumulates pre-birth

expenses may recover those costs if and only if the child is born alive.  As a consequence, a plaintiff-parent could recover pre-birth expenses if the child survives -- even for only a minute -- but not if the child is stillborn.

                              B.

        Even assuming that plaintiffs' claims require a live birth, the majority's theory nonetheless fails because, in enacting CPLR 214-a, the legislature displaced the courts' "judicial authority" to implement "common-law rule[s]" of accrual (majority op at 10-11).  While courts have the authority to interpret accrual dates "[a]bsent legislative action to the contrary" (majority op at 4), courts are not free to disregard a clear statutory prescription.

        Contrary to the majority's claim, there is no indication that CPLR 214-a merely "codified the common-law rule" without "constrict[ing] judicial authority to otherwise define when a cause of action accrues" (majority op at 10-11).  Rather, in enacting CPLR 214-a, the legislature specifically sought to "constrict[] judicial expansiveness towards a more plaintiff friendly . . . rule" (LaBarbera v New York Eye & Ear Infirmary, 91 NY2d 207, 213 [1998] [citation omitted]).  The legislature passed section 214-a "in response to the medical malpractice crisis," embodying a "clearly expressed legislative intent that . . . exception[s] to the general time of the commission accrual rule not be broadened beyond [their] existing confines"

(Goldsmith v Howmedica, 67 NY2d 120, 123 [1986] [citations omitted]).  In other words, the statute's two exceptions -- "continuous treatment" and "foreign object" -- are both narrow and exclusive; by codifying them, the legislature "limited the range of common-law development" (LaBarbera, 91 NY2d at 211).

We have therefore made clear that these exceptions should not be broadened beyond their terms, and new exceptions should not be created except by the legislature itself (see id. at 213; Rodriguez v Manhattan Medical Group, 77 NY2d 217, 224 [1990]; Goldsmith, 67 NY2d at 123).  "[E]fforts to enlarge the[se] exception[s]," we have said, would "undermine, if not contradict, the statute and the policy lines and precedents that have emerged to fix boundaries for this troublesome field" (LaBarbera, 91 NY2d at 213).  "[T]he Legislature, having statutorily occupied the field, is more appropriately suited to effectuate any redefinition or expansion" of these exceptions if, in the legislature's determination, such a revision is warranted (id.).

Nor does the statute purport to preserve the "judicial authority" that the majority exercises.  CPLR 214-a does not, for instance, provide that plaintiffs have 2½ years from "accrual" without defining "accrual" itself.  Instead, the statute explicitly provides that plaintiffs' malpractice claims "must be commenced" within 2½ years "of the act, omission or failure complained of" (CPLR 214-a).  By implementing a judicially-

crafted "date of birth" accrual rule, the majority contravenes the plain language of the statute and undermines clear legislative policy mandating a strict adherence to the statutory text.

                              II.

The majority also contends that the legislature "could not have anticipated our holding in Becker," in which the Court first recognized a medical malpractice cause of action to recover the extraordinary expenses incurred by a prospective parent for the care and treatment of their child (majority op at 11).  As a factual matter, this proposition is questionable:  Becker's companion case, Park v Chessin, was brought in 1972 -- three years *before* CPLR 214-a was enacted (see Park v Chessin, 60 AD2d 80, 83 [2d Dept 1977).  And Becker itself was filed in 1976 -- the year after section 214-a's enactment -- and was decided by this Court in 1978 -- just three years after its enactment.  Becker's holding was far from unforeseeable when, in 1975, the legislature enacted section 214-a.

In any event, Becker was decided nearly forty years ago and, over the ensuing four decades, the legislature has unequivocally discredited the majority's reasoning: it has repeatedly considered -- and rejected -- a number of proposals to deviate from CPLR 214-a (see 2016 NY Senate-Assembly Bill S911A, A285A).  Though the legislature has statutorily modified accrual dates in other contexts (e.g. CPLR 214-b; id. 214-c), it has

consistently declined to do so in the context of these medical malpractice claims, reasoning that "the harsh effect of CPLR 214-a in certain cases" is "outweighed by 'the effect of potentially open-ended claims upon . . . defendants and society'" (Helgans v Plurad, 225 AD2d 554, 557 [2d Dept 1998], citing Goldsmith v Howmedica, Inc., 67 NY2d 120, 124 [1986]; see also 2016 NY Senate-Assembly Bill S911A, A285A).  Accordingly, even if Becker was unforeseen at the time of section 214-a's enactment -- an unlikely scenario -- the legislature has repeatedly opted, over the span of several decades, not to modify the statutory accrual rule for these Becker-type claims.  If the legislature has chosen not to "ameliorate the statute's effects" by altering the existing scheme, "this Court should not tread where the legislature refuses to go" (McCoy v Feinman, 99 NY2d 295, 307 n 2 [2002]; see also CPLR 201 ["No court shall extend the time limited by law for commencement of an action."]).

III.

Since Becker, this Court and others have properly applied CPLR 214-a in the context of these medical malpractice actions, employing the date of the alleged malpractice -- not the date of birth -- as the applicable accrual date.  In Jorge v New York City Health & Hosps. Corp., for instance, we dismissed the plaintiff's medical malpractice action as untimely, using the "alleged act of malpractice -- the misreading of the father's genetic test results" as the relevant date of accrual (79 NY2d

905, 906 [1992]). Several Appellate Division Departments have similarly concluded that a plaintiff-parent's cause of action does not "accrue upon the birth of the children but on the date of the alleged malpractice" (Weed v Meyers, 251 AD2d 1062, 1064 [4th Dept 1998]; see also Scrofini v Sebollena, 226 AD2d 523, 523 [2d Dept 1996]).

This Court has also rejected the majority's theory that a cause of action cannot accrue before any "legally cognizable injury" has been suffered. In Goldsmith v Howmedica, for instance, the plaintiff received a total hip replacement and, eight years after the device was implanted, a component of the implant malfunctioned (67 NY2d 120, 122 [1986]). On appeal, the Court was asked to determine the applicable accrual date -- either the "implantation of the prosthetic device," or the date of "injury to the patient" (id.). Holding that "the cause of action accrues upon implantation," not upon the date of injury, the Court determined that the plaintiff's cause of action was barred by the applicable three-year statute of limitations (id. at 122, 124). The Goldsmith Court rejected the argument -- accepted by the majority in this case -- that "to require the bringing of an action within three years of the commission of the malpractice effectively forecloses an action against the doctor before any injury has been suffered" (id. at 123-124):

> "The argument is not new. We have carefully
> considered it on numerous occasions. In
> each, we weighed the detriments of such a
> result against the effect of potentially

open-ended claims upon the repose of
defendants and society, and held that the
Statute of Limitations must run from the time
of the act until the Legislature decrees
otherwise"

(id. at 124 [citations omitted]).

IV.

Our decision in LaBello v Albany Med. Ctr. Hosp. (85
NY2d 701 [1995]) -- a "distinguishable" case (majority op at 12)
-- does not justify the majority's disregard of the operative
statute.  In LaBello, the Court considered an *infant*'s own cause
of action, not the parents' medical malpractice claim.  The Court
determined that the infant's cause of action, seeking damages for
allegedly faulty prenatal care, "accrue[d] on the earliest date
the injured plaintiff could juridically assert the claim and sue
for relief, that is, the date of being born alive" (id. at 703).

Applying CPLR 214-a to this "unenvisaged circumstance"
-- an unborn plaintiff -- the Court reasoned that the statute
"expresses and presumes physical existence and juridical capacity
to sue" (id. at 706).  Because the "plaintiff, having no legal
existence, could not have legally uttered the complaint" prior to
his birth, his cause of action could not accrue "before the
infant acquired the recognized legal capacity to sue" (id. at
706, 707).  In other words, since the infant plaintiff lacked the
"cognizable status in a court of law to sue" until his birth, his
statute of limitations did not begin to run until that time (id.
at 707).

The barrier to suit present in <u>LaBello</u> -- the plaintiff's non-existence -- is entirely inapplicable in this case.  Here, plaintiffs are parents seeking damages in their own right, who had the requisite capacity to sue on the date of the alleged malpractice.  Unlike an unborn infant, these plaintiffs had the "recognized legal capacity to sue" prior to the birth of their children (<u>LaBello</u>, 85 NY2d at 706).  Because of this critical distinction, which formed the basis of <u>LaBello</u>'s holding, <u>LaBello</u> is entirely inapt.

## V.

The majority's goal is laudable one: it allows more time for plaintiffs asserting claims due to alleged medical malpractice resulting in devastating and life-altering injuries to their minor children.  But this well-intentioned effort contravenes the plain language of CPLR 214-a and implements an arbitrary "date of birth" accrual rule that does not correspond to the date of the alleged injury, the date of plaintiff's capacity to sue, or the date of the injury's discovery.  Accordingly, while the majority's holding saves these plaintiffs' claims, it will not save others.

The governing statute explicitly provides that plaintiffs' limitations period runs from the date of the alleged malpractice, not the date of the child's birth.  Though that mandate may inflict hardship on plaintiffs, "the Statute of Limitations must run from the time of the act until the

Legislature decrees otherwise" (<u>Goldsmith</u>, 67 NY2d at 124).

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

<u>For Each Case</u>:  Order insofar as appealed from affirmed, with costs, and certified question answered in the affirmative. Opinion by Chief Judge DiFiore.  Judges Rivera, Stein, Fahey and Wilson concur.  Judge Garcia dissents in an opinion.  Judge Feinman took no part.


Decided December 14, 2017