Farrakhan v Obiakor Obstetrics & Gynecology, P.C. (2025 NY Slip Op 51019(U))

[*1]

Farrakhan v Obiakor Obstetrics & Gynecology, P.C.

2025 NY Slip Op 51019(U)

Decided on June 24, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 24, 2025
Supreme Court, Kings County

Aisha Farrakhan, Plaintiff,

against
Obiakor Obstetrics & Gynecology, P.C., IFEANYI OBIAKOR, M.D., F.A.C.O.G., BARBARA GORDON, MD, and MARIAN WILLIAMS, Defendants.
OBIAKOR OBSTETRICS & GYNECOLOGY, P.C., IFEANYI OBIAKOR, M.D., F.A.C.O.G., BARBARA GORDON, MD, and MARIAN WILLIAMS, Third Party Plaintiffs,
against
BROOKLYN HOSPITAL CENTER, Third Party Defendant.

Index No. 35038/2001

Plaintiff
Steven L. Barkan, Esq. ([email protected])
Steven L. Barkan, P.C.
445 Broad Hollow Road, Suite 25
Melville, NY 11747
516-358-3688
Defendants
Ginette Michelle Portera, Esq. ([email protected])
Law Offices of Benvenuto & Gaujean
1800 Northern Boulevard
Roslyn, NY 11576
516-775-2236

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: 4 — 6, 7 — 29, 31 — 34, 35
Defendants Obiakor Obstetrics & Gynecology, P.C., Ifeanyi Obiakor, M.D., F.A.C.O.G., Barbara Gordon, M.D., and Marian Williams move (Seq. No. 13) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing the Complaint, on the grounds that Plaintiff cannot establish pecuniary damages with reasonable certainty.
Plaintiff opposes the motion.
Plaintiff first commenced this action on September 25, 2001. In brief, her medical malpractice claims arise from an alleged failure of Defendants to diagnose and inform her of her son's congenital birth defects during her pregnancy, specifically his missing upper extremities. Plaintiff alleges that had she known of this condition, she would have terminated the pregnancy.
As an initial matter, the Note of Issue in this action was filed on October 11, 2018. Under this court's Part Rules, consistent with the Kings County Supreme Court Uniform Civil Term Rules, a motion for summary judgment must be made no later than sixty days after the filing of the Note of Issue.
The instant motion filed on March 21, 2025 clearly exceeds the 60-day timeline, but a late motion for summary judgment may be accepted by stipulation of the parties or with leave of the Court upon good cause shown ("a satisfactory explanation for the untimeliness") pursuant to Brill v City of New York (2 NY3d 648, 652 [2004]) and CPLR 3212 (a).
The Court also notes that Defendants previously moved for summary judgment in August 2003, and Plaintiff cross moved for summary judgment. That motion and cross motion, on the basis of liability and proximate causation only, were denied on January 6, 2004. "Generally, successive motions for summary judgment are not permitted. A court may, however, properly entertain such a motion when it is substantively valid and the granting of the motion will further the ends of justice and eliminate an unnecessary burden on the resources of the courts." (Verizon New York, Inc. v Supervisors of Town of N. Hempstead, 169 AD3d 740, 744 [2d Dept 2019] [internal quotation marks and citations omitted].) "Successive motions for summary judgment should not be made based upon facts or arguments which could have been submitted on the original motion for summary judgment" (Hillrich Holding Corp. v BMSL Mgt., LLC, 175 AD3d 474, 475 [2d Dept 2019]).
In their moving papers, Defendants argue there is good cause to consider their late summary judgment motion. The procedural history of this action is complex and involves a joined action that was later discontinued, an extended bankruptcy stay due to a defendant in that joined action, an administrative dismissal and motion to restore, and two prior Note of Issue filings that were later vacated. Defendants' submissions demonstrate that although the final Note of Issue was filed in October 2018, there was still outstanding discovery and multiple status/compliance conferences held after that date. According to Defendants, the first "substantive discussion concerning this case" after Plaintiff's child reached the age of majority occurred on January 8, 2025, and their argument that no extraordinary expenses were incurred could not have been brought prior to this date.
Defendants have made a showing that their argument on proof of damages could not have been addressed within sixty days of the Note of Issue, nor in their prior summary judgment motion which was filed over twenty years ago. Furthermore, the Court finds the new motion for summary judgment is substantively valid (addressing the issue of recoverable damages, which was not considered or decided in [*2]the 2004 motion), the underlying argument and facts were not available to Defendants when the prior summary judgment motion was filed, and in the circumstances of this case, a judgment as a matter of law at this stage would further the ends of justice and eliminate unnecessary trial practice.
Plaintiff has not objected to the motion on the basis that it is untimely or successive. Therefore, upon Defendants' showing of good cause and without objection from Plaintiff, the Court will consider the late summary judgment motion on the issue of damages.
In the state of New York, no cause of action for "wrongful life" on behalf of an infant exists, i.e., "the assertion that but for the negligence of the healthcare provider, the parent would have aborted the fetus rather than giving birth to a child with abnormalities" (see generally Sheppard-Mobley ex rel. Mobley v King, 4 NY3d 627, 638 [2005]). As noted by the Court of Appeals, there can be no "legally cognizable injury" to the infant born under these circumstances, as this "'demands a calculation of damages dependent upon a comparison between the Hobsons's choice of life in an impaired state and nonexistence,' which the law is not equipped to make" (Alquijay by Alquijay v St. Luke's-Roosevelt Hosp. Ctr., 63 NY2d 978 [1984], quoting Becker v Schwartz, 46 NY2d 401, 412 [1978]).
However, the child's parents "may maintain a cause of action on their own behalf, provided there is a breach of duty flowing from the defendants to themselves, as prospective parents, for the extraordinary costs incurred in raising a child with a disability" (Klein v Bialer, 72 AD3d 744, 746 [2d Dept 2010]). This cause of action "sounds essentially in negligence or medical malpractice," specifically with regard to a failure to diagnose or advise of the fetus's abnormality during pregnancy (Mayzel v Moretti, 105 AD3d 816, 817 [2d Dept 2013]). The parents "must establish that malpractice by a defendant physician deprived them of the opportunity to terminate the pregnancy within the legally permissible time period," as they would have if they knew about the condition (id. at 817). Assuming the parent can make the requisite showing of liability, this cause of action specifically allows "parents to recover the extraordinary expenses incurred to care for a disabled infant who, but for a physician's negligent failure to detect or advise on the risks of impairment, would not have been born" (B.F. v Reproductive Medicine Assoc. of New York, LLP, 30 NY3d 608, 612 [2017]; see also Becker at 410; Ciceron v Jamaica Hosp., 264 AD2d 497, 497-498 [2d Dept 1999]).
The Court of Appeals has described this cause of action as a "narrow" one and emphasized that "parents bringing this type of action may seek to recover only the increased financial obligation arising from the extraordinary medical treatment rendered the child during minority" (B.F. at 614, quoting Foote v Albany Med. Ctr. Hosp., 16 NY3d 211, 215 [2011]). The parent may not recover "psychic or emotional damages" or "the ordinary costs of raising a healthy child" (id.). Additionally, there is no recovery permitted for "postmajority extraordinary expenses," even if the child continues to require medical treatment or support. As a parent has "no legal obligation" to provide for their disabled child in adulthood, the Court of Appeals has expressly declined to extend recoverable damages past the age of 21 without authority from the legislature. (Bani-Esraili v Lerman, 69 NY2d 807, 808 [1987].)
As summarized by the Second Department, when the mother's claim sounds in this cause of action:
"the claimed damages cannot be based on mere speculation, conjecture, or surmise, and, when sought in the form of extraordinary expenses related to caring for a disabled child, must be necessitated by and causally connected to the child's condition. The parents' legally cognizable injury is the increased financial obligation arising from the extraordinary medical treatment rendered the child during minority. Since the parents' recovery is limited to their personal pecuniary loss, expenses covered by other sources such as private insurance or public programs are not recoverable." (Mayzel, 105 AD3d 816 [internal quotation marks and citations omitted].)
In a split from the First and Third Departments, it is controlling law in the Second Department that a plaintiff cannot claim damages under this cause of action which were covered by Medicaid (see [*3]Mayzel at 818; Kubik v Erhart, 78 AD3d 905, 906 [2d Dept 2010]; Riley v Rupp, 233 AD3d 1313, 1314-1315 [3d Dept 2024]). The Court of Appeals never reached and expressed "no opinion" on that issue when affirming the Third Department's decision in Foote (16 NY3d at 215-216), because there were issues of fact on whether the infant's expenses exceeded government assistance regardless.
The Court of Appeals has therefore left the lower courts to determine how to address expenses covered by Medicaid or other insurance at this time (Foote at 216). The Second Department has consistently held that monetary damages for this cause of action are limited to expenses incurred directly by the parent, not covered by Medicaid or "reimbursed by other sources" (Vasiu v Berg, 192 AD3d 1060, 1061-1062 [2d Dept 2021]; Mayzel at 818). Plaintiff acknowledges this in their opposition papers and states that they "are claiming pecuniary damages only for the services that plaintiff herself actually provided."
Thus, in considering a summary judgment motion as to damages, this Court must determine if there is an issue of fact as to whether the "medical and other treatment or services necessary for the child during minority" exceeds the "resources provided by government programs" or otherwise available at no cost (Foote at 215). In the Foote case, Plaintiff's expert physician prepared a detailed "life care plan" showing that government programs would provide "only a minimum level of services" and the parents still "would be forced to bear out-of-pocket expenses related to the child's special medical and educational needs" (id.). The Court of Appeals held this raised a triable issue of fact as to damages.
In Mayzel, however, the Second Department found that a life care plan offered by the plaintiffs was "speculative and conclusory," because their son in actuality had "been a resident of skilled nursing facilities since he was discharged from the hospital following his birth," "Medicaid has paid and continues to pay for all of his care and treatment," and the plaintiffs showed no real evidence of pecuniary damages they had incurred or expected to incur by caring for him at home. The court noted that "the plaintiffs express a generalized desire for their son to live at home," but they did not provide evidence supporting the "potential cost of renovating their home" or demonstrate an actual intent to enact the home care plan set forth by the expert. They also submitted "no proof that any of their son's medical or developmental needs are not being appropriately met at the facility where he currently resides," necessitating these alleged additional expenses. (Mayzel, 105 AD3d at 818.) Thus, the Second Department held the parents in that case failed to raise a triable issue of fact on damages, and summary judgment should have been granted.
The Second Department also found that summary judgment was warranted where the parents "failed to submit proof of any financial obligation incurred to date" arising from their son's medical condition, nor sufficient evidence regarding future expenses (Mickens v LaSala, 8 AD3d 453, 455 [2d Dept 2004]). For example, they did not submit "expert testimony from a social worker or any other knowledgeable health care provider to identify any programs [their child] might need which are not available at public expense, or how any comparable private programs might be superior" in addressing his needs (id.).
In support of this motion, Defendants argue that Plaintiff has demonstrated no pecuniary damages were incurred as a result of her son's disability which were not covered by insurance or government programs.
Plaintiff's son was born with no arms, in addition to other congenital defects including an enlarged kidney, a heart murmur, undescended testicles, and difficulty swallowing. As set forth in the movant's papers and Plaintiff's testimony, Plaintiff received supplemental security income (SSI) and welfare throughout her son's infancy. Medicaid covered his expenses when he was treated at various hospitals. Other expenses including prosthetic hands/arms were covered by his father's military insurance, Tri-Care Prime Insurance. Plaintiff testified that her son was provided an Early Intervention physical/occupational therapist at approximately six months old, but she was unhappy with their services and "kicked them out." She testified that she has since assisted him with physical therapy, such as working out and exercising with his brothers.
Since 2003, when Plaintiff's son was two and a half years old, he began receiving disability payments, which were paid to his mother until he turned 18 and to him from the age of 18-21. Plaintiff testified that she paid approximately $125 from a lapse in Tri-Care Prime coverage and did not seek reimbursement. Plaintiff's son briefly had a home care attendant when he was five years old, paid for by Tri-Care Prime, but she terminated the relationship after an incident where the attendant dropped something on her son. She testified that she elected to continue caring for him herself, assisted by other family members, because she did not trust other attendants.
In 2003, Plaintiff's counsel provided a projected "life care plan" as part of this litigation. In 2020, an updated life care plan was created which set forth his continuing need for physical therapy, occupational therapy, psychological counseling, specialty consults, a home health aide, and home modifications. Defendants argue that to this date, Plaintiffs have provided no evidence that any of the outlined services or equipment were in fact provided, at out-of-pocket cost to Plaintiff, while he was a minor. They argue her only confirmed costs were "minor expenses" such as bath chairs which did not exceed the regular payments from his disability benefits.
Plaintiff's son turned 21 years old in 2021. Thus, in this case, any pecuniary damages which Plaintiff may prove she is entitled to are known rather than anticipated future damages.
Defendants have established prima facie that Plaintiff has not incurred expenses for extraordinary medical treatment, care, or equipment for her son "directly attributable to the child's disabilities which were not reimbursed by other sources" (Vasiu at 1062). As Defendants note, the list of potential expenses in the "life care plan" for Plaintiff's son — including home renovations, prosthetic replacements, and years of professional physical therapy and home health assistance — has not been substantiated by any evidence Plaintiff implemented this plan or incurred these expenses. The burden therefore shifts to Plaintiff to raise an issue of fact.
In opposition, Plaintiff submits a personal affirmation, contending for the first time in this litigation that she personally provided skilled nursing services to her son as a Licensed Practical Nurse, that she has been responsible for assisting him in activities of daily living since terminating his insurance-covered home health aide, and that she has "provided physical and occupational therapy" to him on a regular basis because she could not find another health care provider qualified to do so.
In essence, Plaintiff does not argue that she incurred extraordinary out-of-pocket expenses for her son's medical treatment, but asserts vaguely that she provided the equivalent, unpaid medical treatment of a skilled nurse, physical/occupational therapist, and home health aide, and that she should be compensated as such. There is simply no authority under the law for recovering such damages.
The only evidence provided is a wholly conclusory affirmation, lacking sufficient detail on the unpaid health care services she allegedly provided to her son, in lieu of hiring private or insurance-covered personnel for these services. Of note, Plaintiff affirms that she is a licensed nurse in the state of Georgia, but she gives no information as to when she obtained this license, nor whether she was ever licensed or registered to practice in New York or North Carolina, where she lived with her son during his minority. She asserts that "medically qualified" nursing/wound care was not otherwise available to her son from insurance or government programs, but she does not establish her own training or certification. She also does not set forth any qualifications or training to provide physical or occupational therapy, but states in a conclusory manner that she was more qualified due to her son's rare physical conditions.
It is clear that Plaintiff's son was born with extraordinary physical disabilities, including but not limited to his missing upper extremities. It is also clear she has provided personal care and assistance to him throughout his life. However, the affirmation submitted by Plaintiff is simply insufficient to establish any evidence of actual pecuniary damages on which recovery is available: extraordinary medical expenses, based on more than "mere speculation, conjecture, or surmise," which were "necessitated by and causally connected to the child's condition" (Mayzel at 817). Plaintiff presented no proof that her son's "medical or developmental needs [were] not being appropriately met" under government or insurance-covered providers, nor testimony from any qualified expert that the home care or physical [*4]therapy rendered by his mother was superior to the services "available at no cost" which she rejected (Mayzel at 818; Mickens at 455).
In the 24 years of this litigation, Plaintiff has provided no substantial evidence of the "increased financial obligation" arising from her son's disability prior to his 21st birthday. As Plaintiff failed to "submit proof of any financial obligation incurred to date for any extraordinary medical or educational expense," she has failed to lay bare her proof and raise a triable issue of fact to defeat Defendants' summary judgment motion (Mickens at 455).
For these reasons, the Court finds that regardless of whether Plaintiff could prove that Defendants breached a duty to her by failing to detect or advise her of her son's impaired condition during her pregnancy, and she would have aborted the pregnancy if she had known, there is no issue of fact as to whether she incurred any recoverable pecuniary damages under this cause of action. The movants are therefore entitled to summary judgment as a matter of law.
The Court notes that, upon the representations of counsel and review of the record, Plaintiff's related action against Brooklyn Hospital Center has been settled, and any claims of the moving defendants against Third-Party Defendant Brooklyn Hospital Center are resolved. Accordingly, this action, including the Third-Party Complaint, is dismissed in its entirety.
It is hereby:
ORDERED that Defendants' motion for summary judgment in their favor is granted, Plaintiff's complaint against them is dismissed, and this action is dismissed in its entirety
The Clerk shall enter judgment in favor of OBIAKOR OBSTETRIC & GYNECOLOGY, P.C., IFEANYI OBIAKOR, M.D., F.A.C.O.G., BARBARA GORDON, M.D., and MARIAN WILLIAMS.
This constitutes the decision and order of the Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.