**Lateral Inv. Mgt., LLC v Marcum, LLP**

2024 NY Slip Op 33865(U)

October 29, 2024

Supreme Court, New York County

Docket Number: Index No. 154273/2023

Judge: Joel M. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

-----------------------------------------------------------------------------------X

| | |
|---|---|
| LATERAL INVESTMENT MANAGEMENT, LLC,LATERAL JUSCOM FEEDER, LLC,LATERAL RECOVERY, LLC,BENCHMARK BUILDERS, INC.,FTE NETWORKS, INC.,BRIAN MCMAHON, FREDERIC SACRAMONE | **INDEX NO.**  154273/2023 |
| Plaintiffs, | **MOTION DATE**  10/13/2023 |
| - v - | **MOTION SEQ. NO.**  002 |
| MARCUM, LLP, ALAN J MARKOWITZ, | |
| Defendants. | **DECISION + ORDER ON MOTION** |

-----------------------------------------------------------------------------------X

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 76, 77, 78, 79, 80, 81, 82, 84, 85
were read on this motion to _____ DISMISS _____.

    This is an accounting malpractice and fraud case.  Defendant Marcum LLP ("Marcum") was retained by plaintiffs FTE Networks, Inc. ("FTE") and Benchmark Builders, Inc. ("Benchmark") to perform audits of their respective businesses.  Defendant Markowitz, a partner at Marcum, oversaw the audits.  According to Plaintiffs, during the course of the audit work FTE's then-Chief Executive Officer Michael Palleschi and then-Chief Financial Officer David Lethem were engaged in a wide array of fraudulent schemes that ultimately resulted in criminal guilty pleas and an investigation by the Securities and Exchange Commission ("SEC").  Plaintiffs contend in this action that Marcum not only negligently failed to uncover and disclose the misconduct during the course of its audit, but that Marcum was made aware of the misconduct and assisted Lethem and Palleschi in concealing it.  Defendants move to dismiss the complaint in its entirety.  For the reasons that follow, the motion is **granted in part**.

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**
**Motion No.  002**

**Page 1 of 20**

Background

According to the Complaint, the factual allegations of which are assumed to be true for purposes of this motion, Marcum was FTE's "long-standing auditor[]" (NYSCEF 47 ¶¶ 5, 60). The relationship was far reaching, and "had impacts on their relationship with several other of [Marcum's] significant institutional clients" due to their relationship with a former Board Member of FTE, Luisa Ingargiola (*id.* ¶¶ 64, 66). Plaintiffs allege that these relationships motivated Marcum and Markowitz to engage effectively in a cover-up of misconduct by FTE's CEO and CFO (*id.* ¶ 67). The Complaint states that "Ingargiola was one of—if not the only— Board member who had any idea" about an improper scheme by Lethem and Palleschi to issue undisclosed convertible notes (*id.* ¶¶ 56, 70). Furthermore, Plaintiffs allege "Defendants directly participated in Palleschi and Lethem's embezzlement and conversion of Company funds as Palleschi and Lethem would convey trips, gifts and other perks to Markowitz in exchange for his willingness to participate in the fraud against FTE" (*id.* ¶ 145).

In July 2015, in contemplation of a financing arrangement with FTE, plaintiffs Lateral Investment Management, LLC ("Lateral Investment"), Lateral JusCom Feeder, LLC ("JusCom"), and Lateral Recovery, LLC ("Lateral Recovery") (collectively, "Lateral") sought to review Marcum's files on FTE for fiscal year 2014 (NYSCEF 47 ¶¶ 49, 368). Marcum agreed to provide access to their work papers (NYSCEF 35). On October 28, 2015, Lateral entered into a Credit Agreement under which Lateral would provide more than $50 million in financing to FTE over time, in part relying on the work papers (NYSCEF 47 ¶¶ 44, 51). The Credit Agreement was secured by an interest in FTE's assets (*id.*).

From 2016 to 2018, Lethem and Palleschi purportedly "embezzled millions of corporate funds for personal use and enjoyment through a variety of schemes" (*id.* ¶ 83). Plaintiffs claim

**154273/2023 LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL** **Page 2 of 20**
Motion No. 002

2 of 20

"[t]his conduct was completely outside the scope" of their employment and that they "had totally abandoned the interests of the Company" (*id.* ¶ 84). The two also "fraudulently inflated FTE's revenue" between 2016 and 2018, reporting more than $12 million for non-existent work (*id.* ¶¶ 104; 216-19). Despite "identify[ing] this revenue as being wholly unsupported," Marcum and Markowitz purportedly "performed no further investigations . . . and rubber-stamped FTE's filings during the relevant years" (*id.* ¶ 107). With reference to the absence of documentation of these revenues, Markowitz noted in an email to Palleschi that "I am the only one keeping you out of jail" (*id.* ¶ 229; NYSCEF 50). (Defendants, not surprisingly, strongly disagree with the adverse inferences Plaintiffs draw from this communication, but that dispute cannot be resolved on a motion to dismiss.)

Marcum purportedly obtained "actual evidence of undisclosed or improperly disclosed related party transactions involving Palleschi," and "helped conceal and/or turned a blind eye to" any evidence of misconduct (NYSCEF 47 ¶¶ 86-87). Defendants "issued unqualified opinions and approved FTE's public filings" over that period and "wholly omitted any information" about the various schemes perpetrated by the FTE's former executives (*id.* ¶¶ 93, 95, 107; 220-28).

In connection with their work, Defendants allegedly "proposed various large downward adjustments to FTE's draft financial disclosures, . . . [that] would have lowered FTE's reported pre-tax income by more than $14 million," but ultimately acquiesced to the FTE executives' improper demands to forego such downward adjustments (*id.* ¶¶ 108, 255-62). In choosing "not to report any of these adjustments to FTE, . . . Defendants knowingly made fraudulent statements in FTE's 2017 10-K in which they falsely claimed they performed analysis of FTE's income pursuant to [Public Company Accounting Oversight Board ('PCAOB')] standards and found no material misstatements or omissions" (*id.* ¶ 111). Plaintiffs also allege that Defendants ignored

**154273/2023  LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**          **Page 3 of 20**
**Motion No.  002**

3 of 20

PCAOB Standard 4015 by failing to make material adjustments to FTE's financial disclosures in its 10Qs for 2017 and 2018 (*id.* ¶¶ 265-66).

Another of the former FTE executives' schemes purportedly involved "secretly enter[ing] into seventy-four (74) Convertible Notes," which they utilized in large part to enrich themselves (*id.* ¶¶ 183-84). The Convertible Notes totaled nearly $5 million (*id.* ¶ 186). Issuing the Notes violated FTE bylaws because Lethem and Palleschi did not obtain Board approval, and instead forged Board member signatures (*id.* ¶ 187). They also purportedly "doctored" the Notes to remove reference to the fact that they were convertible (*id.* ¶ 188). Defendants allegedly "knew [the Notes'] true nature, but consciously chose to help Palleschi and Lethem hide their existence from Plaintiffs in FTE's audited filings" (*id.* ¶ 190). Markowitz purportedly requested to see one of the Notes, but it was not provided, and Markowitz allegedly accepted this refusal (*id.* ¶ 192). Marcum later obtained a copy of a purportedly forged Board resolution authorizing issuance of two Convertible Notes, but failed to obtain any of the Convertible Notes for review until a different FTE director sent a copy to Defendants (*id.* ¶¶ 194-95, 202). Markowitz allegedly "pressured" FTE's director of financial reporting to "drop the issue" (*id.* ¶¶ 203-05). Defendants likewise failed to substantiate approximately 491,000 shares of FTE common stock allegedly issued to "purported 'consultants' and 'vendors' in lieu of payment" (*id.* ¶ 196).

During Lethem and Palleschi's tenure, Lateral amended the Credit Agreement to raise the $50 million financing limit and infused cash into FTE on an advanced basis (*id.* ¶¶ 45, 47). The Amended Credit Agreement restricted FTE's "ability to secure capital from non-Lateral sources," but under Lethem and Palleschi's control FTE nevertheless entered into "approximately ninety (90) usurious loans disguised as merchant cash advances with various hard-money lenders" (the "MCA Agreements") (*id.* ¶¶ 149-50). Plaintiffs allege Defendants

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**   **Page 4 of 20**
Motion No.  002

[* 4]                                                    4 of 20

"opted to help Palleschi and Lethem conceal" the default from FTE's Board and from Plaintiffs, which "wreaked havoc" on FTE in both the short and long term (*id.* ¶¶ 157-78). Plaintiffs, including Lateral, "relied on the[] 2017 and 2018 10-Qs" (*id.* ¶ 267).

On or about April 14, 2017, Lateral corresponded with Markowitz to discuss FTE's 2016 Form 10-K (*id.* ¶ 52). Shortly thereafter, FTE acquired Benchmark (NYSCEF 47 ¶ 36). On May 11, 2017, Marcum issued its opinion on FTE's 2016 financial statements, which were included in the 10-K (NYSCEF 62, at 38). Marcum issued its opinion on the 2017 financial statements on April 17, 2018 (NYSCEF 59, at 75).

On November 7, 2018, Marcum auditor Edward Bechold emailed Ingargiola and Lethem regarding an error in the "related party footnote disclosures" for FTE's June 30, 2018 Form10-Q (NYSCEF 47 ¶ 130-31). However, Marcum "did not push FTE to restate this 10-Q" or "raise the issue of Palleschi's unauthorized bonus with anyone other than Lethem and Ingargiola" (*id.* ¶ 132-33). Around the same time, Ingargiola sent Bechold a copy of one of the Convertible Notes, copying Lethem (*id.* ¶ 200; *see also* NYSCEF 58). Upon receipt, Bechold identified it as having "an impact on disclosure and going concern" (NYSCEF 47 ¶ 201).

An employee from Benchmark filed a whistleblower complaint with the SEC in December 2018 which, together with the "confession" of FTE's former controller, spurred investigations by FTE and government authorities (*id.* ¶¶ 271-75). Around April 2019, FTE filed a form 8-K reporting that "the financial statements for the periods ended March 31, June 30, and September 30, 2018 and 2017, should no longer be relied upon" (*id.* ¶ 279). Defendants did not cooperate in FTE's internal investigations (*id.* ¶ 282). When DOJ brought a criminal indictment against Palleschi and Lethem in July 2021, Plaintiffs allege "its investigation at that point had not revealed Defendants' significant role" in the fraud (*id.* ¶ 287).

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**          **Page 5 of 20**
**Motion No.  002**

5 of 20

On February 28, 2023, the SEC issued an Order to institute administrative proceedings against Markowitz (*id.* ¶ 74; NYSCEF 32) (the "Markowitz Order").  The Markowitz Order alleged that Markowitz "engaged in improper professional conduct" and

> repeatedly failed to conduct [the audits] in accordance with [PCAOB] auditing standards.  Markowitz violated several PCAOB standards, including standards requiring Markowitz to act with due professional care, by improperly relying on FTE management's false representations during the audits and failing to obtain sufficient audit evidence regarding the existence and valuation of unbilled receivables and revenue, miscellaneous receivables, notes payable and equity transactions.  Despite contradictory evidence and significant red flags that signaled FTE's underlying misconduct, Markowitz improperly relied on management representations and failed to perform procedures to substantiate or reconcile those representations with contradictory evidence.

(NYSCEF 32, at 2; NYSCEF 47, ¶ 74).

The SEC issued a second Order to institute administrative proceedings against Marcum on June 21, 2023, alleging that Marcum's misconduct resulted in "misstatements to investors that Marcum [Special Purpose Acquisition Company ('SPAC')] audits were conducted in compliance with [PCAOB] standards" (NYSCEF 33, at 3; NYSCEF 47 ¶ 79).  Plaintiffs claim "[i]t was not until" these Orders issued that "Plaintiffs became aware Defendants were responsible for the fraud schemes" (NYSCEF 47 ¶ 212).  As a consequence, Plaintiffs "re-launched their internal investigations . . . with a new emphasis on Defendants' role" (*id.* ¶ 298).  They now assert Defendants were actively involved in Lethem and Palleschi's misconduct, which has resulted in a significant loss in the value of FTE stock (*id.* ¶¶ 300-49).  The Plaintiffs allege $702 million in damages (*id.* ¶¶ 350-51).

Plaintiffs commenced the present action by Summons with Notice on May 10, 2023, and subsequently filed a Complaint on June 13, 2023, an Amended Complaint on August 17, 2023,

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**
**Motion No.  002**

**Page 6 of 20**

6 of 20

[* 6]

and a Second Amended Complaint on September 5, 2023 (NYSCEF 1; NYSCEF 10; NYSCEF 27; NYSCEF 47).

In the sprawling 641-paragraph Second Amended Complaint, the operative pleading for purposes of this motion, Plaintiffs allege fourteen causes of action, which are apparently asserted by all plaintiffs against all defendants unless otherwise specified: (1) fraud, (2) aiding and abetting fraud, (3) conspiracy to commit fraud, (4) aiding and abetting breach of fiduciary duty, (5) breach of fiduciary duty, (6) negligence, (7) gross negligence, (8) aiding and abetting embezzlement, (9) aiding and abetting conversion, (10) aiding and abetting breach of trust, (11) commercial bad faith, (12) civil conspiracy, (13) FTE's claim for breach of contract against Marcum, and (14) Benchmark's claim for breach of contract against Marcum.

Defendants moved to dismiss the Second Amended Complaint in its entirety (NYSCEF 76).

**Discussion**

Defendants raise multiple grounds for dismissal under CPLR 3211, including that (1) the Complaint is untimely; (2) Plaintiffs fail to state viable causes of action; (3) the Complaint should be dismissed under the doctrine of *in pari delicto* because the former officers' misconduct should be attributed to plaintiff FTE; and (4) some or all Plaintiffs lack standing to bring the claims.

For the reasons set forth below, the Court dismisses the Sixth, Seventh, Thirteenth, and Fourteenth claims as untimely; dismisses the Third, Eleventh, and Twelfth claims for failure to state legally viable causes of action; and narrows the surviving claims solely to the extent they are asserted by the non-FTE plaintiffs. The motion to dismiss on grounds of *in pari delicto* is denied without prejudice to asserting that defense on summary judgment or at trial.

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**          **Page 7 of 20**
**Motion No.  002**

7 of 20

## I.    Statute of Limitations

Under CPLR 214(6), a three-year statute of limitations applies to "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort" (*see Maya NY, LLC v Hagler*, 106 AD3d 583, 586 [1st Dept 2013] [applying 3-year statute of limitations to claim for accountant malpractice]).

By contrast, claims alleging fraud and breach of fiduciary duty based on fraud – if not deemed to be malpractice claims governed by CPLR 214(6) – are generally subject to a six-year statute of limitations, and potentially longer (two years after the plaintiff's actual or constructive discovery of the misconduct) in the case of fraud (CPLR 213(8); *Kaufman v Cohen*, 307 AD2d 113, 119 [1st Dept 2003] [noting the statute of limitations for breach of fiduciary duty claims "based on allegations of actual fraud" is six years]; *see also Monteleone v Monteleone*, 162 AD3d 761, 763 [2d Dept 2018]).  The same statute of limitations applies to claims for aiding and abetting breach of fiduciary duty and fraud (*see Kaufman*, 307 AD2d at 126-27; *see also Wimbledon Financing Master Fund, Ltd. v Hallac*, 192 AD3d 617, 618 [1st Dept 2021]; *Belair Care Ctr., Inc. v Cool Insuring Agency, Inc.*, 168 AD3d 1162, 1166 [3d Dept 2019])], again assuming they are not deemed to be malpractice claims subject to CPLR 214(6).

### a.    *Negligence and Gross Negligence*

Plaintiffs' negligence and gross negligence claims are indisputably malpractice claims. Such claims accrue when the malpractice is committed, not when it is discovered (*Williamson ex rel. Lipper Convertibles, L.P. v PricewaterhouseCoopers LLP*, 9 NY3d 1, 7-8 [2007]).  In the accounting context, the claim "accrues upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice"

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**            **Page 8 of 20**
Motion No.  002

8 of 20

(*Ackerman v Price Waterhouse*, 84 NY2d 535, 541 [1994]). Here, the negligence and gross negligence claims accrued when Marcum issued its audit reports, namely on May 11, 2017, and April 17, 2018 (NYSCEF 59, 62). Thus, even after considering the effect of COVID tolling covering a portion of 2020, this May 2023-initiated action is prima facie untimely. Thus, those claims are presumptively time-barred, subject to estoppel principles discussed *infra*.

### b. Breach of Contract

Plaintiffs' breach of contract claims are also presumptively untimely under CPLR 214(6) because they are malpractice claims "based in contract" (*see also Pannone v Silberstein*, 118 AD3d 413, 415 [1st Dept 2014]). Contrary to Plaintiffs assertions, the language of the FTE agreement, which provides that Marcum was "responsible to inform [the Client] . . . of all matters of fraud, material errors, and all illegal acts that may come to our attention" does not create an independent contractual duty removing the claim from the confines of CPLR 214(6) (NYSCEF 47, ¶ 40; NYSCEF 66-67).[1] Rather, this language merely incorporates a professional accounting standard that would have been applicable in any event (*see* Auditing Standards 2401.79 ["Whenever the auditor has determined that there is evidence that fraud may exist, that matter should be brought to the attention of an appropriate level of management."]).

### c. The Remaining Claims

As to Plaintiffs' remaining claims for (1) fraud; (2) civil conspiracy and conspiracy to commit fraud; (3) breach of fiduciary duty; (4) aiding and abetting (a) fraud, (b) breach of fiduciary duty, (c) embezzlement, (d) breach of trust, and (e) conversion; and (4) commercial bad faith, Defendants do not in the present motion argue that these claims are untimely under their

---

[1] This language was also included in the Benchmark Agreement (*see* NYSCEF 68).

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**      **Page 9 of 20**
**Motion No.  002**

own respective statutes of limitations, but rather are—like the negligence and breach of contract claims discussed above—essentially malpractice claims that are subject to a three-year statute of limitations.

In assessing whether a claim is subject to the three-year statute of limitations contained in CPLR 214(6), "the pertinent inquiry is . . . whether the claim is essentially a malpractice claim" (*In re R.M. Kliment & Frances Halsband, Architects*, 3 NY3d 538, 541-42 [2004]). Plaintiffs' allegations in connection with these claims, accepted as true and broadly construed, permit a reasonable inference that Defendants not only breached their professional obligations as auditors (that is, that they committed professional malpractice), but *also* that they knew of and participated in the fraudulent schemes and affirmatively concealed them. If true, that goes beyond the confines of professional malpractice. Accordingly, Plaintiff's remaining claims (if proven) are not subject to the three-year statute of limitations governing malpractice claims.

    *d. Equitable Estoppel*

Finally, Plaintiffs' assertion that Defendants are equitably estopped from raising a statute of limitations defense with respect to their otherwise time-barred claims is unavailing. Equitable estoppel is an "extraordinary remedy [that] is only applicable in circumstances where there is evidence that plaintiff was lulled into inaction by defendant in order to allow the statute of limitations to lapse" (*E. Midtown Plaza Hous. Co., Inc. v City of New York*, 218 AD2d 628, 628 [1st Dept 1995]; *see also General Stencils v Chiappa*, 18 NY2d 125, 127-28 [1966]).

Under that doctrine, a defendant's assertion that the statute of limitations has been run may be precluded when "the plaintiff 'was induced by fraud, misrepresentations or deception from filing a timely action'" (*Pahlad ex rel. Berger v Brustman*, 33 AD3d 518, 519 [1st Dept 2006]). To rebut an assertion of an untimely complaint, "equitable estoppel will apply 'where

[* 10]

plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action'" (*Zumpano v Quinn*, 6 NY3d 666, 674 [2006] [quoting *Simcuski v Saeli*, 44 NY2d 442, 449 [1978]]). "[T]he plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations" (*id.*).

Here, Plaintiffs rely in large part on the contention that Defendants declined to participate in FTE's internal investigation. However, "mere silence or failure to disclose the wrongdoing is insufficient" (*Zoe G. v Frederick F.G.*, 208 AD2d 675, 676 [2d Dept 1994]). Nor can Plaintiffs rely upon the SEC's purported description of Defendants as "unwitting victims" of Lethem and Palleschi, as this cannot be attributable to Defendants. Moreover, Plaintiffs' Complaint indicates that FTE employees who were not involved in the fraud attempted to alert Defendants about it, undermining a claim that the company was lulled against asserting timely claims against Defendants (NYSCEF 47 ¶¶ 359, 403, 416, 500). Accordingly, Plaintiffs' allegations are insufficient to warrant resuscitating their untimely malpractice claims.

In sum, Plaintiffs' contract and negligence claims—Counts Six, Seven, Thirteen, and Fourteen—are dismissed as untimely. As to the remaining claims, Defendants have not established that they are untimely.

## II. Failure to State a Claim

Moving to the merits, Defendants contend that Plaintiffs have failed to state legally viable causes of action. Because the Court has already dismissed the negligence and contract claims as untimely, the following analysis is limited to the remaining claims (Counts One through Five and Eight through Twelve).

On a motion to dismiss under CPLR 3211, the Court must accept all factual allegations as true, afford the pleadings a liberal construction, and accord plaintiff the benefit of every

**154273/2023 LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL** **Page 11 of 20**
**Motion No. 002**

11 of 20

possible favorable inference (*Leon v. Martinez*, 84 N.Y.2d 83, 87-88 [1994]). "[H]owever, 'allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration'" (*Myers v Schneiderman*, 30 NY3d 1, 11 [2017] [citations omitted]). As is often stated, "the court must 'determine only whether the facts as alleged fit within any cognizable legal theory'" (*Richards v. Sec. Resources*, 187 A.D.3d 452 [1st Dept. 2020], quoting *Leon*, 84 N.Y.2d at 87-88).

*(1) Fraud*

"The elements of a cause of action for fraud are a representation concerning a material fact, falsity of that representation, scienter, reliance and damages" (*Stuart Silver Assocs., Inc. v Baco Development Corp.*, 245 AD2d 96, 98 [1st Dept 1997]).

Plaintiffs have adequately pleaded a fraud claim with the requisite detail (CPLR 3016(b)). They have alleged a course of conduct which, taken as true, permits the inference that Defendants intentionally or recklessly misrepresented material facts and that one or more of the Plaintiffs reasonably relied upon the representations to their detriment. Plaintiffs' allegations extend beyond Defendants audit work to specific representations that Defendants allegedly made to the various Plaintiffs throughout the course of their work for FTE.

*(2) Fiduciary Duty*

"The duty owed by an accountant to a client is generally not fiduciary in nature" (*Bitter v Renzo*, 101 AD3d 465, 465 [1st Dept 2012]). However, an exception to that general rule applies "'where the allegations include [the accountant's] knowledge and concealment of illegal acts and diversion of funds and failure to withdraw in the face of a conflict of interest,'" (*Gerzog v Goldfarb*, 206 AD3d 554, 555 [1st Dept 2022] [quoting *Nate B. & Frances Spingold Found. v Wallin, Simon, Black and Co.*, 184 AD2d 464, 465-66 [1st Dept 1992]]). In *Gerzog*, a law firm's

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**       **Page 12 of 20**
**Motion No.   002**

12 of 20

accountant allegedly did not merely fail to fulfill his professional responsibilities to prepare financial statements, but "falsely classified [one partner's] personal expenses as case preparation expenses on income tax returns, with knowledge that deducting these expenses would reduce the profits available to be paid to plaintiff and that classifying them in this way would conceal the wrongdoing" (*id.*). It did not matter that "plaintiff had access to his K-1s and the firm's tax returns . . . because his claim is that the true nature of [the Defendant attorney's] personal expenses was not obvious on the face of these documents" (*id.*).

Here, Plaintiffs allege that Defendants actually knew of the circumstances surrounding several of Lethem and Palleschi's schemes and intentionally concealed them in the audits, working papers, financial disclosures, and discussions they had and shared with the Plaintiffs. The Complaint alleges with requisite specificity that the Defendants knowingly (1) accepted Lethem and Palleschi's fraudulent "downward adjustments to FTE's pre-tax income," (2) "conceal[ed] the technical default of the Credit Agreement and the existence of the MCA Agreements and FTE's defaults thereunder"; (3) "turned a blind eye to[] millions of dollars w[or]th of self-dealing and personal enrichment by" Lethem and Palleschi ; (4) failed to fix the "admittedly inaccurate 10-Q" or "raise with any independent Board member the fact that Palleschi gave himself an unauthorized bonus" (NYSCEF 47, ¶¶ 397, 415, 439, 444), among other allegations. The factual allegations underlying these assertions are sufficient to withstand a motion to dismiss under CPLR 3211.

### (3) Commercial Bad Faith

Commercial bad faith claims are made "[w]here a depositary bank acts dishonestly—where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself become a participant in a fraudulent scheme—such conduct falls wholly outside the allocation

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**     **Page 13 of 20**
**Motion No. 002**

13 of 20

of business risks that was contemplated by UCC 3-405(1)(c)" (*Prudential-Bache Securities, Inc. v Citibank, N.A.*, 73 NY2d 263, 275 [1989]). Plaintiffs cite no case to support the proposition that this claim can be sustained in an action against an auditor which is not predicated on the UCC. Accordingly, the Eleventh Cause of Action for commercial bad faith is dismissed.

### (4) Civil Conspiracy

Because "'[c]onspiracy to commit a fraud is never of itself a cause of action,'" Plaintiffs' Third and Twelfth Causes of Action for conspiracy to commit fraud and civil conspiracy are dismissed (*see Empire Outlet Builders LLC v Constr. Resources Corp. of N.Y.*, 170 AD3d 582, 583 [1st Dept 2019] [citing *Hoeffner v Orrick, Herrington & Sutcliffe LLP*, 85 AD3d 457, 458 [1st Dept 2011]]). New York only recognizes civil conspiracy as a *legal theory*—not an "independent cause of action" – to connect Defendants to other substantive causes of action (*Cohen Bros. Realty Corp. v Mapes*, 181 AD3d 401, 404 [1st Dept 2020]). As a practical matter, this claim is already incorporated in Plaintiffs' fraud claims asserted against the same defendants.

### (5) Aiding and Abetting

Plaintiffs assert causes of action for aiding and abetting (1) fraud, (2) breach of fiduciary duty, (3) embezzlement, (4) conversion, and (5) breach of trust. Notwithstanding the differences in the torts underlying these claims, Defendants do not raise arguments about the primary torts, which they remain free to do as the litigation proceeds. Rather, they argue Plaintiffs have failed to show Defendants' actual knowledge of the violations and that Defendants did not render "substantial assistance" to the primary violators.

To plead a viable cause of action for aiding and abetting, plaintiffs must adequately allege (1) a primary violation; (2) the defendant's actual knowledge of the violation; and (3) substantial assistance (*see Stanfield Offshore Leveraged Assets, Ltd. v Metro. Life Ins. Co.*, 64

**154273/2023 LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL** **Page 14 of 20**
Motion No. 002

14 of 20

AD3d 472, 476 [1st Dept 2009]; *William Doyle Galleries, Inc. v Stettner*, 167 AD3d 501, 503 [1st Dept 2018]; *Yuko Ito v Suzuki*, 57 AD3d 205, 208 [1st Dept 2008] [breach of fiduciary duty]; *see also Alliance Network, LLC v Sidley Austin LLP*, 43 Misc3d 848, 865 [Sup Ct NY County 2014]).  Plaintiffs must allege "[a]ctual knowledge, as opposed to merely constructive knowledge, . . . and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary [tort]" (*Global Mins. & Metals Corp. v Holme*, 35 AD3d 93, 101-02 [1st Dept 2006]).

As discussed above, Plaintiffs have adequately alleged actual knowledge on the part of the Defendants with respect to the misconduct of Plaintiffs' former officers.  Plaintiffs have also adequately pled that Defendants rendered substantial assistance to the primary violators. Substantial assistance "'means more than just performing routine business services for the alleged fraudster'" (*McBride v KPMG Int'l*, 135 AD3d 576, 579 [1st Dept 2016] [quoting *CRT Invs., Ltd. v Merkin*, 85 AD3d 470, 472 [1st Dept 2011]]).  In particular, Defendants allegedly made decisions to conceal defaults on the Credit Agreement and MCA Agreements and tried to pressure employees not to raise concerns (*see* NYSCEF 47, ¶¶ 397, 415, 439, 444, 500). Accordingly, the causes of action for aiding and abetting are adequately supported by the allegations in the Complaint.  Of course, whether Plaintiffs can *prove* those allegations is a matter for another day.

### III.    *In Pari Delicto*

The doctrine of *in pari delicto* "mandates that the courts will not intercede to resolve a dispute between two wrongdoers" (*Kirschner v KPMG LLP*, 15 NY3d 446, 464 [2010]). "Traditional agency principles play an important role in an *in pari delicto* analysis" (*id.* at 465). Presumptively, "[a] corporation must . . . be responsible for the acts of its authorized agents even

**154273/2023    LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**     **Page 15 of 20**
      **Motion No.  002**

15 of 20

if particular acts were unauthorized" (*id.*). However, under the "adverse interest" exception, where the agent has "'totally abandoned his principal's interests and . . . act[ed] *entirely* for his own or another's purposes," such acts are *not* imputed to the corporation (*id.* at 466 [quoting *Center v Hampton Affiliates*, 66 NY2d 782, 784-85 [1985]]). Thus, in the corporate context, *in pari delicto* does not operate to bar a claim by the corporation if the corporate wrongdoers had totally abandoned the corporation's interests (*see id.*). In these scenarios, the "fraud is committed *against* a corporation rather than on its behalf" (*id.* at 467). In other words, applying the adverse interest exception requires that "the scheme that benefitted the insider operated at the corporation's expense" (*id.* 467-68).

In applying *Kirschner*, the First Department has held that "the mere continuation of a corporate entity does not per se constitute a benefit that precludes application of the adverse interest exception" (*Conway v Marcum & Kliegman LLP*, 176 AD3d 477, 477-78 [1st Dept 2019]). The First Department elaborated:

> Moreover, reliance on speculation about the benefits to be derived from the continued existence of an entity is inconsistent with the analysis of the adverse interest exception in *Kirschner*. It may be possible in every case to construct a hypothetical scenario where the company teetering on the brink of insolvency because of its agent's fraud meets with an opportune circumstance that allows it to resume legitimate business operations. Permitting such speculation would render the adverse interest exception meaningless. Further, an ongoing fraud and a continued corporate existence may harm a corporate entity: The agent may prolong the company's legal existence so that he can continue to loot from it, as appears to have been the case here.

(*Id.* at 478.)

Giving Plaintiffs the benefit of all reasonable inferences, the Court cannot conclude that Defendants have conclusively established an *in pari delicto* defense based solely on the

**154273/2023 LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL** **Page 16 of 20**
**Motion No. 002**

16 of 20

pleadings. Plaintiffs have pleaded sufficient allegations to support an inference that Lethem and Palleschi totally abandoned FTE's interests and kept the entity alive merely to pilfer it. The purposes for which the alleged funds were used included "deferred salaries to [Lethem and Palleschi]," "personal expenses, ranging from private jet trips and personal warehouse leases," and "engaging in related party transactions that sent millions of FTE common stock shares . . . to entities Palleschi and Lethem controlled" (*id.* ¶ 440).

While Defendants assert that the Second Amended Complaint contains allegations stating that Lethem and Palleschi's schemes permitted FTE to attract investors and raise funding, the allegations do not conclusively establish that these funds were used for legitimate corporate purposes (*see id.* ¶ 57, 96, 104, 213-15, 269, 298, 335, 397). The fact that the fraud purportedly concealed FTE's "technical default" under the Lateral Credit Agreement is similarly not dispositive at this stage, given that the Credit Agreement itself purportedly was part of the fraudulent course of conduct perpetrated by the Lethem and Palleschi solely for their personal benefit and to the detriment of the company (and, allegedly, with the aid of Defendants' misconduct). In other words, the question is not whether Lateral funded FTE due to the Lethem and Palleschi's fraud, but whether the fraud was at least in part for the benefit of FTE rather than the individual malefactors.

In short, Plaintiffs have adequately alleged that the fraud underlying this case was so pervasive and thorough that FTE may have merely been the vehicle for Lethem and Palleschi to carry out their fraud and not an entity which benefited from the fraud. Of course, this ruling does not preclude Defendants from seeking to establish an *in pari delicto* defense based on the evidence adduced at summary judgment or trial.

**154273/2023 LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL** **Page 17 of 20**
**Motion No. 002**

17 of 20

## IV. Standing

Finally, Defendants are correct that the non-FTE plaintiffs (Lateral, Benchmark, McMahon, and Sacramone) lack standing to assert claims in their own right for breach of fiduciary duty, embezzlement, conversion, and breach of trust. Those claims all allege injury *to FTE*. The non-FTE plaintiffs do not and cannot assert derivative claims on behalf of FTE, which is asserting those claims directly (*see Bryan v W. 81 St. Owners Corp.*, 186 AD2d 514, 515 [1st Dept 1992] [noting a shareholder's derivative action "is 'secondary and contingent,' and arises only in the event that the directors do not comply with a demand that the claims be brought directly"]).[2]

Similarly, the non-FTE plaintiffs cannot recover under their fraud-based claims to the extent they seek to recover for the lost value of their FTE shares. "[C]laims for damages based on the lost value of [a party's] holdings is . . . quintessentially a derivative claim by a shareholder" (*Serino v Lipper*, 123 AD3d 34, 41 [1st Dept 2014] [citing *O'Neill v Warburg, Pincus & Co.*, 39 AD3d 281 [1st Dept 2007]]).

---

[2] Plaintiffs' reliance on *Brinckerhoff v JAC Holding Corp.* (2 AD3d 250, 251 [1st Dept 2003] [citing *In re Tri-Star Pictures, Inc. Litigation*, 634 A2d 319 [Del 1993]]) ("*Brinkerhoff I*") for the proposition that "a shareholder has standing to bring a direct claim where it has suffered special injury not suffered by all shareholders generally" is misplaced. The decision in *Brinkerhoff I* was expressly recalled and vacated on reargument by the First Department (*see Brinckerhoff v JAC Holding Corp.*, 10 AD3d 520, 521 [1st Dept 2004], which ultimately decided the case *without* reference to a "special injury" analysis. Notably, the Delaware Supreme Court in (*Tooley v Donaldson, Lufkin & Jenrette, Inc.*, 845 A2d 1031, 1039 [Del 2004]), upon which New York courts have relied (*see Yudell v Gilbert*, 99 AD3d 108, 114 [1st Dept 2012]), expressly "disapprove[d]" of the "special injury" analysis (*see* 845 A2d at 1035 ["[T]he concept of 'special injury' that appears in some Supreme Court and Court of Chancery cases is not helpful to a proper analytical distinction between direct and derivative actions. We now disapprove the use of the concept of 'special injury' as a tool in that analysis."]). The non-FTE plaintiffs' contention that they may bring a direct claim based on "special injury" as shareholders is unavailing.

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**                **Page 18 of 20**
**Motion No.  002**

18 of 20

The non-FTE plaintiffs may pursue their fraud-based claims solely for *individual* damages (*i.e.*, not damages suffered indirectly by virtue of their shareholdings in FTE), if any. For example, Lateral has alleged reliance and damages based on its Credit Agreement and related amendments, and the Benchmark Plaintiffs—Benchmark and its former principals, McMahon, and Sacramone—have alleged that they were damaged by relying upon the misrepresentations and entering into the acquisition agreement (NYSCEF 47, ¶¶ 300-353). Thus, these plaintiffs may maintain causes of action for fraud and aiding and abetting fraud, though the claims must be narrowed to exclude damages based on the lost value of their shares.

In sum, the Fourth, Fifth, Eighth, Ninth, and Tenth Causes of Action can be maintained only by FTE, and the First and Second Causes of Action may be asserted by non-FTE plaintiffs only with respect to their respective individual damages (if any).

Accordingly, it is

**ORDERED** that Defendants' motion to dismiss is **granted in part**, as follows: (i) the Sixth (negligence), Seventh (gross negligence), Thirteenth (FTE's breach of contract) and Fourteenth (Benchmark's breach of contract) causes of action are dismissed as untimely; (ii) the Third (conspiracy to commit fraud), Eleventh (commercial bad faith), and Twelfth (civil conspiracy) causes of action are dismissed for failure to state a cause of action; (iii) the First (fraud) and Second (aiding and abetting fraud) causes of action are dismissed only to the extent Plaintiffs Lateral, Benchmark, McMahon and/or Sacramone seek to recover the lost value of their FTE shares; and (iv) the Fourth (aiding and abetting breach of fiduciary duty), Fifth (breach of fiduciary duty), Eighth (aiding and abetting embezzlement), Ninth (aiding and abetting conversion), and Tenth (aiding and abetting breach of trust) causes of action are dismissed only

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**
**Motion No.  002**

**Page 19 of 20**

19 of 20

[* 19]

to the extent asserted by Plaintiffs Lateral, Benchmark, McMahon and/or Sacramone, and otherwise the motion is **denied**; and it is further

ORDERED that the parties appear for a Preliminary Conference **on December 3, 2024, at 10:00 a.m.**, with the parties to circulate dial-in information in advance of the conference. The parties may elect to submit a proposed preliminary conference order in advance of (and potentially in lieu of) holding a conference (https://www.nycourts.gov/LegacyPDFS/courts/comdiv/NY/PDFs/Part3-Preliminary-Conference-Order.pdf.pdf).

This constitutes the Decision and Order of the Court.

20241029150105JMCOHEN587DE6CDD5624ARA9825AE629C966B85

_____
**10/29/2024**
**DATE**

_____
**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |
| --- | --- | --- |
| | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE |

**154273/2023   LATERAL INVESTMENT MANAGEMENT, LLC ET AL vs. MARCUM, LLP ET AL**
**Motion No.  002**

**Page 20 of 20**

20 of 20